## COUNTY OF PROVIDENCE, MARCH TERM, 1861, AT PROVIDENCE.

PRESENT:

Hon. SAMUEL AMES, CHIEF JUSTICE.
Hon. GEORGE A. BRAYTON, } JUSTICES.
Hon. ALFRED BOSWORTH, }

---

ALLEN GREENE *v.* THOMAS LLOYD HALSEY CREIGHTON.

Where the tenants in common of a parcel of land laid out into building lots, conveyed to a city, by deed poll, a strip of the land running through the centre of the parcel for a highway, and called it Halsey street, and, in the same deed, inserted the following clause:—"And it is hereby expressly understood, covenanted and agreed, by the said grantors, for themselves and their heirs and assigns, respectively, forever, that no building of any description shall, at any time forever hereafter, be erected, placed or put within eight feet of said Halsey street, or of either side thereof," *Held*, that the clause was a mutual covenant between the tenants in common, and should be construed as a grant in fee to each of a negative easement in the lands of all, restricting the right to build within the specified limits, which could be enforced between the tenants in common, their heirs and assigns, at law and in equity ; and could, at least, be used as evidence of the breach of a covenant against all incumbrances made by the heir at law of one of the tenants in common in a deed conveying one of the lots, which had afterwards been set off to him in severalty.

Damages recoverable of a covenantor against incumbrances, on account of the existence of such an easement, although set out and claimed in the declaration, will not include loss arising from the unfitness of the lot, because of the easement, for a particular use in connection with another estate, for which use, without communication with the covenantor and without his knowledge, the covenantee purchased the estate; nor, any sum of money laid out by the covenantee upon the lot to compensate for the easement a tenant, whose contract of letting was made, in ignorance of the easement, long subsequent to the purchase ; such damages not arising in the usual course of things from the breach of covenant, nor such as might reasonably be supposed to have been in the contemplation of the parties at the time of making the covenant as consequent upon the breach of it.

THIS was an action of covenant, submitted to the court without formal pleadings, partly upon an agreed statement of facts, and partly upon evidence ; the plaintiff to recover costs, although less than one hundred dollars in damages, and the damages to be in full of the breach of covenant, all necessary parties for that purpose having concurred in the agreement.

The agreed facts were, that the heirs and devisees of the late Thomas Lloyd Halsey, Senior, being then the owners in fee simple, in their own right, as tenants in common of the land now covered by Halsey street, with the lands adjacent on both sides of said street, on or about the twenty-seventh day of January, 1841, made and delivered to the City of Providence a deed poll of the land now covered by Halsey street, a street fifty feet wide in all parts, except the curve thereof, where it is much wider, "for the special purpose of being used and improved as a public highway, and for no other purpose, forever." The deed contained the following clause :—

"And it is hereby expressly understood, covenanted and agreed by the said grantors, for themselves and their heirs and assigns, respectively, forever, that no building of any description shall, at any time forever hereafter, be erected, placed or put, within eight feet of said Halsey street, on either side thereof."

The defendant is one of the heirs-at-law of Harriet Creighton, who was one of the grantors in the above deed ; and by partitions afterwards made between said Halsey's heirs and devisees, and between the heirs of said Harriet Creighton, after her decease, became entitled in severalty to the lot of land on the south side of Halsey street, next easterly of the Free Chapel lot, fronting

Greene *v.* Creighton.

westerly fifty feet on said Halsey street, and extending back at right angles, easterly, one hundred feet, being lot number (5) on the plat of the Halsey lands. Being thus entitled, the defendant, on the 30th day of June, 1854, for full consideration paid therefor, conveyed said lot to the plaintiff, Allen Greene, and one Duty Evans, in fee simple, as tenants in common, for their own use, by deed containing full covenants of warranty, according to the form usual in this state; amongst which covenants, was the following :—

" And that the said Duty Evans and Allen Greene, their heirs and assigns, shall and may, from time to time, and at all times forever hereafter, by force and virtue of these presents, lawfully, peaceably and quietly have, hold, use, occupy, possess and enjoy, the said demised and bargained premises, with the appurtenances, free and clear, and freely and clearly acquitted, exonerated and discharged, of and from all and all manner of former or other gifts, grants, bargains, sales, leases, mortgages, wills, entails, jointures, dowries, judgments, executions and incumbrances, of what name or nature soever, that might in any manner or degree obstruct or make void the present deed."

Evans and the plaintiff subsequently sold ten feet of the rear of the lot to the owner of the lot adjoining on the rear, to be kept open as a gangway, for the use of the lot and the lots adjacent, and after said conveyance, Evans sold to the plaintiff, with warranty, his undivided portion of the remainder of said lot.

At the time of his purchase from the defendant, it appeared that the plaintiff was wholly ignorant of the clause in the above deed from the heirs and devisees of Thomas Lloyd Halsey to the City of Providence, restraining the owners of the lots on Halsey street from building within eight feet of either side of said street, and was never apprised of the same until, having become the sole owner of said lot, and attempting to build on the line of said street, the adjoining proprietors apprised him of said restriction, and threatened to proceed against him if he contravened the same; whereupon, he gave up his design of so building, and brought this suit against the defendant for breach of the covenants of his deed. It did not appear that the City of Providence had forbidden the plaintiff to build on any part of his lot, or

threatened him with suit, if he did; or, in any way, disturbed him in the unrestricted enjoyment of the same.

By the agreement of submission, which was executed by Evans as well as the defendant, the plaintiff was entitled to sue and recover damages for the above breach of covenant, if any breach there was, in the same manner as if he were the sole grantee in the deed from the defendant; the judgment he should recover to inure solely to his benefit, and to be in full of any claim which he might have against Evans, on his covenants to the plaintiff, or which Evans might have against the defendant, upon the covenants of the latter to Evans and the plaintiff.

*James Tillinghast, for the plaintiff :*—

I. If the words of covenant in the deed of the Halsey heirs to the City of Providence stood alone, in a separate instrument, there could be no doubt that they would create a covenant *inter sese* between the parties signing the instrument. There is no stringent rule requiring the name of the city to be inserted here as covenantee. It is a well-settled rule of construction, that instruments of this nature are to be so construed as to best carry out the intentions and objects of the parties, consistently, of course, with the language used. Platt on Covenants, 136, 137, &c. There can be no question as to the object of the insertion of this clause. The grantors then owned a large tract of land, including that over which this street is laid and the adjacent lands, on both sides. They plat these lands into house lots, and throw out the street to bring the lots into market. The city is made the nominal grantee of the street; but, as a matter of fact, cared and probably knew, at the time, nothing about it. At least, there is no record of the acceptance of the street by the city, or its taking any action with it, till long afterwards a grade of part of it (between Benefit and Pratt streets) was fixed by the street commissioners, October 1, 1849. The city, as a corporation, had and has no interest in this covenant. It affects no land conveyed to the city, but land lying on each side of that conveyed, belonging to, and retained by, the grantors. These grantors then contemplated, and shortly after made, a partition between themselves of these lots bounding on either side of Halsey street. It was a great object to them to widen the space on this street, for light

and air, and provide, as between themselves, that this space should always be kept open, and thus, by having uniformity, render the street more attractive for building purposes.   To construe this covenant, therefore, as a *mutual covenant* by the grantors *between themselves* will best accomplish their evident intention in inserting it.

II.  But even if this is construed as simply a covenant with the city, yet the evidence adduced and offered sufficiently showed a disturbance, to maintain this action.   For, if this is a covenant with the city, it is a conveyance or dedication of so much land to the public use, for light and air.   Any encroachment upon it, therefore, would become a public nuisance, for which any person specially injured, e. g., owners of adjacent lots, could even maintain an action at law for damages, or a bill in equity to restrain the encroachment.   And although the owners of adjacent lots, or other owners upon the plat and street, might not be able to maintain *an action at law upon the covenant,* yet it is settled they could maintain a *bill in equity to enforce the covenant.* *Barrow* v. *Richard,* 8 Paige, 351 ; *Brouwer* v. *Jones,* 23 Barb., 153.   See also *Bleeker* v. *Bingham,* 3 Paige, 246.   Now, the evidence adduced and offered showed claims and interference and *threats to prosecute,* made by adjacent owners upon this street, to which claims and threats, after inquiring into their validity, the plaintiff yielded.   It is well settled by the modern authorities, that under 'the covenant of quiet enjoyment, even when standing alone, or even under the covenant of general warranty, the covenantee may voluntarily yield to claims, upon a paramount title made by persons having the power to enforce those claims, particularly if accompanied with threats of suit, and thereupon maintain his action upon the covenant.   Among numerous other authorities, see *Hamilton* v. *Cutts,* Ex'r., 4 Mass. 493 ; *Sprague* v. *Baker,* 17 Ib. 586 ; *Whitney* v. *Dinsmore,* 6 Cush. 124 ; *Loomis* vs. *Bedel,* 11 N. Hamp. 74 ; *Fowler* v. *Toling,* 6 Barb. Sup. Ct. 168 ; *Brown* v. *Dickerson,* 12 Penn. St. Rep. (2 Jones) 372.

III.  But our covenant is not merely a covenant for quiet enjoyment, but to this is also added the covenant against incumbrances.   And this latter is not a mere covenant of *indemnity*

*against* incumbrances, as is the usual English covenant, (see Rawle on Cov. for Title, p. 131; Platt on do. 330,) but seems to combine this with a covenant that the estate is *in presenti* absolutely free from incumbrance. By no other construction can full effect be given to all its language. The practical utility of such a double construction (if it may be so termed) is evident, and that there is no legal objection to it is established by a late case in New Jersey: *Carter* v. *Denman*, 3 Zabrisk. 260. And it is believed no case can be found where the covenant has not contained words of indemnity, but has been couched simply in this broad language, (i. e. that the grantee " shall have, hold, &c., *free* and clear, and freely and clearly acquitted and discharged of all incumbrances,") where any disturbance or eviction has been held necessary, or where it has been held that any present existing incumbrance was not a breach. On the contrary, it is believed, wherever the question has arisen, an existing incumbrance has always been held a breach of a covenant so worded. The old case, *Vane* v. *Ld. Barnard*, Gilbert Eq. Rep. 7, which, at first sight, seems to give Ld. Chan. Cowper's opinion to the contrary, will be found, on examination, to be a direct authority in favor of this construction. For what Ld. Cowper there said was applied and confined expressly to the contingent nature of one of the charges upon the estate there sought to be relieved against. That charge was peculiar. It was not a present existing incumbrance, and might never become an incumbrance at all. On the contrary, however, in that same case where the charge *was a present existing* incumbrance, it was held to be within the covenant, and Ld. Barnard was decreed to discharge and protect against its payments, *past and future*. This construction, too, entirely reconciles with this decision and these dicta of Ld. Cowper's, the decision in *Hammond* v. *Hill*, Com. 180, as cited in Platt Cov. 333. So, too, in *Griffith* v. *Harrison*, 4 Mod. 249, upon any other construction, the *declaration* must have been held bad upon the demurrer, for no ouster or disturbance was alleged. So, too, *Hall* v. *Dean*, 13 John. 105, is a direct adjudication to this effect, and cannot be distinguished from the case at bar. So, also, is the case cited above, in New Jersey, *Carter* v. *Denman*, 3 Zabriskie, 260; see, also, *Cole* v.

*Lee,* 30 Maine, 392 ; Rawle on Cov. for Title, 300, 301 ; 198, 199.
Again, the concluding clause of our covenant greatly strengthens
this construction. Surely, any existing, outstanding incum-
brance is one " that might in any " (some) " measure or degree
obstruct or make void this present deed." Compare *Stanard* v.
*Eldridge,* 16 John. 254.

IV. Whether the incumbrance here is not also a breach of the
covenant of seizin, or of the covenant of right to convey, upon
which the plaintiff is entitled to recover, is submitted to the de-
cision of the court.

*Currey, for the defendant :—*

I. There is no covenant in the deed to the City of Providence,
since there is no covenantee. The clause claimed to be such does
not profess to be an agreement between the grantors in the deed,
nor with the City of Providence ; and if it be doubtful which it
was intended to be, it is void for uncertainty. It was probably
intended to be with the City of Providence, and the name of the
covenantee left out by mistake ; and, perhaps, upon proper proof,
might be reformed in equity ; but, in it its present shape, cannot
be enforced at law.

II. If a covenant at all, it is with the City of Providence, and
the city is the only party who can enforce it. The covenant of
the defendant is a mere covenant for quiet enjoyment ; and as the
city has not disturbed the plaintiff in the full enjoyment of his
lot, or even threatened him if he should build within eight feet
of Halsey street, the threat being on the part of strangers to the
covenant claimed to be broken, no cause of action has arisen.

III. The clause, if a covenant between the Halsey heirs and
devisees, does not run with the land of each of them, but is merely
an agreement between them of a personal character. It formed
no part of a conveyance of their land ; but was an outside agree-
ment between them as to land then held, and to be held by them.

IV. But if a covenant running with the land, its existence is
no breach of the covenant of the defendant ; since so beneficial a
bargain neither obstructs nor makes void his deed to the de-
fendant.

AMES, C. J. Construing the clause in question, in the deed of
the Halsey heirs to the City of Providence, according to the

apparent intent of the grantors, whose language it is, we are satisfied that it is a covenant between *them*, as owners, at the time, of all the lots adjoining Halsey street, for the benefit of their said lots.   They were in the act of dedicating to perpetual public use, as a highway, a strip of their land fifty feet wide at least, through its whole extent, and in the curving part, much wider, upon which their lots, on both sides of it, were to front; and made this further provision for air and light to their lots, for the common benefit.   This, too, is the literal construction of the language employed by them; for they say, "that it is hereby expressly understood, covenanted and agreed *by the grantors*, for themselves, and their heirs and assigns respectively forever, that no building of any description shall, at any time hereafter, be erected, placed or put, within eight feet of Halsey street, on either side thereof."   Certainly, this is a recital under their seals that such a restriction upon building was expressly agreed to by them, to be perpetually binding upon *themselves*, their heirs and assigns, although not expressed to be with the City of Providence, and is therefore their covenant.   The absence of the usual words " and between," after " by," does not alter the signification of the sentence; since the word " agreed," of itself, imports mutuality, and this mutuality is confined, by the language used, to the grantors.

It is said that this covenant does not run with the land so as to impose the burthen of it upon the defendant, who derives title to the land by inheritance from his mother, one of the covenantors, or, so as to avail the plaintiff, his grantee of the land.   Were the action brought upon this covenant, this suggestion might be entitled to consideration; but the action is brought upon the defendant's own covenant contained in his deed to the plaintiff; and the covenant in the deed of his mother and the other Halsey heirs to the City of Providence is merely brought forward as imposing a negative easement upon his inheritance, forbidding him to build within eight feet of Halsey street, and as proof, therefore, of the breach of his covenant against all incumbrances. Looking at the former covenant, as entered into by tenants in common, of lands possessed by them, to be laid out and sold or improved as house lots, and inserted in a deed dedicating a por-

tion of these lands to the use of a highway, for the purpose, in conjunction with the highway, of making the lots more available and convenient as sites for residences; and considering, also, that it professes, for the common benefit, to impose the restriction in perpetuity upon the heirs and assigns of the covenantors, we are of the opinion, that it is to be construed as a grant, in fee, to each, of a negative easement in the lands of all, and as such, capable, upon the disturbance of the easement, of being enforced by the appropriate remedies at law and in equity. *Brewster* v. *Kitchin*, 1 Lord Raym. 317, 322; *Barrow* v. *Richard*, 8 Paige, 351; 1 Smith's Lead. Cas.; Spencer's Case, Am. Notes, 108— 112.

In this view of the matter, it becomes of no importance to the plaintiff's right of action upon the covenant against incumbrances, in the defendant's deed to him, whether this last covenant be regarded as a mere supplement to the covenant for quiet enjoyment, upon which no cause of action arises until eviction, or what is tantamount to it, takes place; or whether it be regarded as broken by the existence of the easement the moment it was made. If the former, the threats of the adjoining proprietors, upon the plaintiff's attempting to build upon the line of Halsey street, to pursue him if he should, and the actual prevention thereby of his thus building, is a sufficient disturbance to enable him to maintain this action; and if the latter, no such disturbance was necessary.

We are, therefore, of opinion that the plaintiff is entitled to recover damages of the defendant, for a breach of the covenant of the latter against incumbrances, and will proceed to assess the plaintiff's damages upon the evidence already submitted, unless, as suggested at the argument, the parties desire to present further evidence upon that subject.

---

This case subsequently came before the court for the assessment of the plaintiff's damages. By the clear weight of the evidence submitted, it appeared, that the negative easement existing in favor of the several lot-owners on Halsey street in each other's lots, complained of by the plaintiff as a breach of the

defendant's covenant, was a benefit,. rather than an injury, to all the lots on the street, including that purchased by the plaintiff.

The plaintiff proved, however, that he was the owner of a lot on Benefit street, which abutted in the rear, at right angles, upon the rear of the lot purchased by him of the defendant, and that he bought the latter to use in connection with his Benefit street lot, to wit, to build a barn on the rear of his purchase, and to have a ten-feet gangway on the east side of it, for the convenience of, and access to, his Benefit street estate; that in ignorance of the restriction to build within eight feet of the front of Halsey street, he built his barn on the rear part of the lot on that street purchased of the defendant, and contracted for the building of a house on the front of the lot, within one foot of the line of Halsey street, and to lease it for five years, both contracts being in writing; that, by thus placing his house, there would be a distance of nineteen feet between the house on the Halsey street lot and the barn reserved by him for the use of his Benefit street estate; but that just as he commenced digging the cellar of his house, he learned the restriction, and was compelled to place his house back and within eleven feet of the barn, which so narrowed the yard in the rear of the house, and brought the latter so unpleasantly near to the barn, that, to satisfy and compensate his tenant of the house, under the contract for letting the same, he was obliged to make outlays upon it, additional to those stipulated, costing $507.21. This sum he claimed to recover of the defendant, as damages for the breach of covenant. It did not appear that the special uses for which the plaintiff bought the lot were known to the defendant at the time of sale, or formed any part of the basis of the contract between him and the plaintiff. The contracts for the building and letting of the house were made by the plaintiff about two years after his purchase.

AMES, C. J. We are satisfied, upon the proof, that the easement which incumbers the estate of the plaintiff on Halsey street, in common with all other estates on that street, is an advantage rather than a detriment to them, and that the plaintiff is entitled only to nominal damages for the breach of covenant of which he complains. The special damage claimed by him is neither the *natural* nor *proximate* consequence of the existence of the incum-

brance stipulated against; but arises out of certain particular uses for which he purchased this estate, not communicated to or known by the defendant, and not possible to the plaintiff except as the owner of an adjoining estate, and also, out of a certain collateral undertaking of the plaintiff with regard to the building upon and leasing of his purchase, entered into long subsequent to the deed and covenant of the defendant.

Consequential damages so remote and out of the contemplation of the stipulating party to a covenant, constitute no legal injury, and *cannot*, in this form of action, and in the absence of fraud, or, as in this case, of even an intent to do wrong, *ought not*, in any form of action, to be visited upon one whose misfortune, rather than whose fault, it is, that he. has broken his covenant. "It were infinite," says Lord Bacon, "for the law to judge the causes of causes, and their impulsion one on another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any. farther degree." Maxims of the Law. Regula, 1.

Where, as in the early case of *Nurse* v. *Barnes*, T. Raym. 77, as commented on by Mr. Sedgwick, in his treatise on Damages, page 87, or, in the case of the warranty of a chain cable, as construed by the court, in *Borradaile* v. *Brunton*, 8 Taunt. 535, and in other cases, the contract is entered into with reference to the special use to which the thing contracted about is to be put, a breach of contract preventing such use or impairing the fitness of the subject of the contract for it, would properly involve the special damage thereby done to the plaintiff. See Sedgwick on Damages, 86–88. The rule applicable to the present case is well laid down by Baron Alderson, in delivering the judgment of the court in *Hadley* v. *Baxendale*, 9 Exch. 353 :—" Where two parties have made a contract which one of them has broken, the damages which the other party-ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably be considered either naturally arising, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of it. Now, if the special circumstances under which the

contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under those special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such breach of contract." See, too, Sedgwick on Damages, Ch. 3, *passim.*

In this view of the question of damages, upon the evidence submitted to us, the plaintiff can recover only a nominal sum on account of the breach of covenant on the part of the defendant; and this we assess for him at one dollar, for which let judgment be entered against the defendant, with costs.