CASE 85—PETITION EQUITY—NOVEMBER 5.

## Graham v. Hite.

APPEALED FROM LOUISVILLE LAW AND EQUITY COURT.

1. RESTRICTION IN DEED AS TO ERECTION OF BUILDINGS.—The condition in a deed that the building or buildings erected on the lot conveyed should be of brick and set the same distance back from the street as a house then standing on an adjoining corner lot owned by the grantor, and should be suitable dwellings for the neighborhood, only requires that the front wall of each building erected on the land shall conform, in respect to distance from the street, with the front wall of the house then standing on the corner lot referred to, and was not intended to forbid the erection, or prescribe the shape or dimension, of any porch, stoop or platform the respective owners might choose to build.

2. SAME.—Assuming that the condition is an easement, it was created for the benefit of the corner lot mentioned, and probably such other lots in the neighborhood as were then owned by the grantor, there being no intention that any one of several lots into which the land conveyed might be divided should be subject to the

Graham v. Hite.

restriction for the benefit of another of such lots. Therefore, the owner of one of several lots into which the land has been divided, can not maintain this action against the owner of another of such lots to enjoin him from erecting a building in violation of that condition, or to compel him to tear away a portion of a building already erected.

3. Same—Estoppel.—The fact that plaintiff, although he passed in going into and out of his dwelling-house only a few feet from where work was going on, gave no intimation to defendant of his objection to the location of his building, but waited until nearly three months' work had been done and a large sum of money expended and then commenced this action, does not quite amount to a legal estoppel, and would not prevent him from maintaining this action if the condition had been created for his benefit.

HUMPHREY & DAVIE for appellant.

1. The plaintiff, Hite, stood silent, for three months, and saw his neighbor, the defendant Graham, dig the foundation and erect this porch, next door, knowing that Graham was unaware of this building restriction; and did not give any notice of objection, or sue, until the foundations were all completed and the porch and house built to the first story, and too late for the plans to be changed. A court of equity should not listen to Hite, under such circumstances, but should treat him as estopped, or leave him to his remedy at law for damages, if any he has. (Klump v. Liebold, 3 Ky. Law Rep., 684; Henry v. Koch, 80 Ky., 391; Phillips v. Clark, 4 Metcalfe, 352.)

2. If the residential plan of having the houses built on the same line was intended to apply not only to the front walls but to the lines of the front steps, then this was waived before Graham began building, for the steps, porticoes, bay-windows, etc., had been built variant in all the previous houses, and the uniformity of design had been abandoned by common consent. (Duncan v. Central Pass. R. R., 85 Ky., 525.)

3. The covenant meant that the front walls of the buildings should be uniform, but did not require uniformity in the mere "projections," like steps, porticoes, balconies, bay-windows, eaves, etc. Uniform front walls with uniform projections would create an unpleasant monotony, and uniform front steps with uniform walls would give a ragged appearance, instead of the pleasing variety in uniformity which uniform walls and variant "projections" would give. This was the meaning of the contract, as well as the practical construction placed on it, in building the previous houses. (Kirkpatrick v. Peshine, 24 N. J. Eq., 208.)

4. The building restriction was only a contract between the original owner of these and other neighboring lands (Barret) and the pur-

chaser from Barret (Matthews). It did not purport to be for the benefit of any one but Barret. When Matthews subdivided the property and sold one lot to Hite and another to Graham, he did not insert any restriction in either deed, and did not make either lot dominant or servient to the other, but conveyed to each with covenant of general warranty, which was inconsistent with the existence of any building restriction. (Hubbell v. Warren, 8 Allen, 182.)

5. No one but the original covenantee, Barret, could sue to enforce this building restriction. Barret's vendee, Matthews, could not sue on it; nor could Matthews' vendees, Hite and Graham, sue each other. Plaintiff Hite, therefore, had no cause of action. (Dana. v. Wentworth, 111 Mass., 293; Schreibe v. Creed, 10 Simons, 28; Keats v. Lyon, Law Rep., 4 Chan. Appeals, 218; Renals v. Cowling-shaw, Law Rep., 11 Chan. Div., 66; Master v. Hansard, Law Rep., 4 Chan. Div., 718; Milligan v. Jordan, 50 N. J. Eq., 363; Sharp v. Roper, 110 Mass., 381; Beals v. Case, 138 Mass., 139; Jewell v. Lee, 92 Am. Dec., 744; Badger v. Boardman, 82 Mass., 559.)

6. The case of Winfield v. Henning, 21 New Jersey Equity, 190 (which was the basis of the judgment against us in the court below) has. been declared to be bad law. '(Dana v. Wentworth, 111 Mass., 293.)

GEO. B. EASTIN for appellee.

1. The projection of appellant's house, which is complained of, is a. part of the house itself, and the front line of this projection is the front line of the house itself.

2. A covenant of this character qualifies the estate and runs with the land, and every grantee of any part of the land is bound by the covenant if he takes it with actual or constructive notice of the covenant. (Winfield v. Henning, 21 N. J. Eq., 188; Trustees of Watertown v. Cowan, 4 Paige Chan., 510; Duncan, Trustee, v. Cent. Pass. Ry. Co., 85 Ky., 525.)

3. Such covenants are enforced in equity between subsequent owners, having actual or constructive notice thereof, although they may not be technically covenants running with the land, which would be binding at law. (Parker v. Nightingale, 6 Allen, 341; s. c., 83 Am. Dec.; 632; Dana v. Wentworth, 111 Mass., 291; Badger v. Boardman, 16 Gray, 560; Jeffries v. Jeffries, 117 Mass., 189; Herrick, &c., v. Marshall, 66 Me., 436; Kirkpatrick v. Peshine, 24 N. J. Eq., 212; Hills v. Miller, 24 Am. Dec., 218; Trustees, &c., v. Lynch, 70 N. Y., 452; Barrowe v. Richard, 35 Am. Dec., 713; Gilbert v. Peteler, 97 Am. Dec., 787; Pomeroy's Eq. Jurisp., sec. 795.)

4. Appellant, claiming under a deed containing this restrictive covenant, was chargeable with notice thereof. (3 Pomeroy's Eq.

Graham v. Hite.

Jurisp., sec. 795; Gilbert v. Peteler, 97 Am. Dec., 787; Brush v. Ware, 15 Peters, s. p., 116.)

5. Proof of the breach of the covenant, with or without actual damages, is sufficient to entitle appellee to the relief prayed for.  (Kirkpatrick v. Peshine, 24 N. J. Eq., 216; Kerr on Injunctions, 532.)

6. This action was brought within a few days after it became apparent that appellant contemplated a breach of the covenant; there was no laches on the part of the appellee, and no room for the plea of estoppel.

GEO. H. ALEXANDER, CHAS. A. WILSON, HARGIS & EASTIN OF COUNSEL ON SAME SIDE.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In December, 1886, T. L. Barret sold and conveyed to J. L. Matthews a parcel of land in Louisville described thus: " Commencing at a point on the west side of Third street 31 feet south of the southwest corner of Third and Oak streets; running thence along the west line of Third street southwardly 108 feet; thence westwardly 126 feet to a ten foot alley; thence northwardly along the east line of said alley 108 feet; thence eastwardly 126 feet to the point of beginning."  The deed then executed contains the following condition: " It is further agreed that the building or buildings that shall be erected on the said lot shall be of brick and set the same distance back from Third street as the house now erected on the southwest corner of said Third and Oak streets, and shall be suitable dwellings for the neighborhood."

September 5, 1887, Matthews conveyed thirty-six and one-half feet off the south end of said parcel of land to Joyes, who conveyed same to I. C. Hale and he to appellant Graham.

September 7, 1887, Matthews conveyed thirty-six and one-half feet adjoining and north of Joyes' lot to I. C. Hale, who conveyed same to appellee Hite.

It does not appear whether Matthews has conveyed the remaining thirty-five feet at the north end of the parcel, and consequently we assume he yet owns it.

Hite, having previously erected and then occupying a dwelling-house on the lot purchased by him, instituted this action August 19, 1890, for judgment enjoining Graham erecting a dwelling-house on his own lot unless set back —— feet from the line of Third street; it being stated in the petition he was then proceeding to erect such building more than ten feet nearer Third street than is the house referred to at the corner of Third and Oak streets.

September 2, 1890, plaintiff made a motion in open court for a preliminary injunction according to prayer of his petition, which, being heard upon affidavits agreed to be used as evidence, and upon exhibits filed, was over-ruled. And there being no judicial restraint upon him, defendant continued construction of his house, according to the original plan, and had, at a cost of several thousand dollars, nearly completed it, when, July 15, 1891, without any additional evidence in behalf of plaintiff, the same court rendered the judgment appealed from requir-ing defendent to tear away a considerable portion of the structure, whereby it will be disfigured and greatly lessened in value and utility.

It seems to us at the outset that the judgment is, under the circumstances, oppressive, and should not stand unless clearly upheld and required by law; especially as appellee has dealt with appellant very unfairly from the begin-ning. The evidence shows appellant was ignorant of the restrictions contained in the Barret deed, and so remained until this action was commenced, while appellee was

aware of it; and that, although the foundation of appellant's house was completed by the last of May, 1890, whereby the general plan was developed, and appellee in going into and out of his own dwelling-house passed a very short distance from where the work was going on, not over twenty-five or thirty feet, he gave no notice or intimation to appellant of objection to the location of his building, but waited until nearly three months' work had been done and a large sum of money had been expended and then commenced this action. His conduct does not, however, quite amount to a legal estoppel as contended by counsel, and we will, therefore, consider the other two grounds for reversal.

It seems to us too plain for dispute that the parties to the deed from Barret to Matthews intended simply for the front wall of each building thereafter erected on said parcel of land to conform with the front wall of the house then standing at the corner of Third and Oak streets, in respect to distance from Third street, and not to either inhibit erection, or prescribe shape or dimension, of any porch, stoop or platform the respective owners might choose to build. And such has been the interpretation of the deed by each person who has erected a dwelling-house on that parcel of land, including appellee; for there projects from the house on the lot retained by Matthews, next to the corner lot, a covered platform and steps six feet, and from the house of appellee steps five feet; in addition to which is a bay-window extending from the second story near to the roof and projecting about three feet from the front of his house, while from the corner house there is a platform and steps projecting only four feet four inches.

It is manifest that Barret, the original grantor, expected there would be erected costly and showy dwelling-houses on the land sold to Matthews, varying in design to suit convenience, taste or fancy of the respective owners, and consequently did not intend to restrict them in regard to size or shape of porches, stoops or platforms. Therefore, unless the porch of appellant that appellee complains of projects an unreasonable distance beyond the front wall of his house, compared with like structures attached to houses of appellee and Matthews, or unreasonably obstructs light and air, there is no cause of action against him, even if bound by the conditions in the Barret deed.

The front wall of his house is on a line of the front wall of the corner house; the porch in question was, as stated by the architect, designed to be covered, but open, and it is not satisfactorily shown in what manner, if at all, light or air will be unreasonably obstructed by it. The only cause of complaint there can be is that it extends $6\frac{7}{10}$ feet nearer his property line than the main body of the house, which certainly does not authorize the judgment rendered; for such width of porch attached to a house set back from the sidewalk would not, ordinarily, nor, compared with projections for similar purposes from the houses of appellee and Matthews, should be regarded as unreasonable. We do not intend, however, to decide that there might not be such projections from one house as would seriously impair the value and usefulness of other houses on the same street; but simply that looking to the condition as set forth in the Barret deed and the practical interpretation given to it by appellee himself, there is not enough in the record before us to justify interference of the chancellor.

Graham v. Hite.

But it is not necessary to consider this branch of the case farther, because we are of opinion appellee has no right to enforce the restriction in that deed against appellant. For Barret did not intend to subject any one of the lots into which the parcel conveyed to Matthews might be subsequently divided to a restriction in its use for benefit of another or others of such lots, nor does the language used authorize such meaning or operation of that condition. Assuming, as may be done, the condition is in effect an easement, it was evidently created for benefit of the corner lot mentioned, and probably such other lots in the neighborhood as were then owned by Barret. The parcel conveyed to Matthews, as well as lots into which it might be divided, was intended to be made subject to the restriction, not each for use of others of such lots, but all for use alone of the corner lot. There was no such restriction in any deed made by Matthews for the two lots now owned by appellee and appellant, nor in any such deed made by Hale through whom both likewise claim. Consequently, Matthews, still owning one of the lots, could not, for the use of it, enforce any restriction on the lot of either appellee or appellant, nor could Hale, if he was still the owner of the lot belonging to appellee, enforce the restriction on appellant. And if neither of them could maintain an action like this against appellant, we do not see how appellee, deriving title from them, could do so. There might be covenants in deeds executed by a common grantor to different purchasers, made mutually and reciprocally binding upon each, but no such condition exists in this case. The essential relation of estates dominant and servient does not exist between the lots owned by appellee and appellant, and

consequently there is not an easement on either for use of the other.

The only case cited by counsel that authorizes this action by appellee is Winfield v. Henning, 21 N. J. Eq., 188. And even in that case it was conceded an action at law would not lie, and upon supposed equitable grounds alone the owner of one lot was held for benefit of another owner to observance of a covenant to the common grantor. But the judgment of the chancellor in that case was, in Dana v. Wentworth, 111 Mass., 291, held to be inconsistent with the decisions of courts of Massachusetts and of England. And we may add that judgment can not be supported by principle, because it restricts one lot owner in the use of his property for the benefit of another with whom he never contracted and to whom he never became bound, expressly or by implication.

The judgment is reversed and cause remanded, with directions to the chancellor to dismiss the action.