ALFRED V. D. GENUNG

*v.*

ANNA L. HARVEY et al.

[Decided July 24th, 1911.]

B. conveyed to G., by separate deeds at different times, two adjoining lots, each deed providing that the lot covered by it was conveyed subject to the condition that no building should be erected thereon nearer to the street line than fifteen feet. This restriction is not shown to have been part of any general scheme; and B. is not shown to have had any remaining lands. G., while owner of both lots, gave a mortgage on the lot first conveyed, which did not reimpose the restriction; and after the giving of the mortgage, but before its foreclosure, under which defendant acquired title to the mortgaged lot, complainant became the owner of the other lot under deed from G.—*Held*, that B., by conveyance of the second lot, having no lands remaining, having lost the right to enforce in equity the restriction on the first lot, G. by reason of this and because of the uniting in her of the ownership of the two lots also lost it; so that, she not having revived such right by reimposing such restriction in her mortgage, complainant, who had only such rights as she had, could not enforce it.

*Mr. Hugh B. Reed,* for the complainant.

*Mr. Charles H. Ivins,* for the defendants.

STEVENS, V. C.

This case is somewhat perplexing, but on careful analysis the proper solution of it does not seem to be doubtful.

The bill is filed to restrain the violation of the following covenant, contained in a deed of Asbury Park property made by James A. Bradley to Mary J. Genung:

"Said premises (a lot one hundred feet square at the southeast corner of Grand avenue and Munroe avenue) are hereby conveyed subject to the following conditions: that no house, cottage or other building shall ever be erected thereon nearer to the line of said Munroe and Grand avenue than fifteen feet."

The complainant owns an adjoining lot on Munroe avenue to the east of the above lot, which was conveyed, with a similar covenant, to Mary J. Genung five years afterwards. The case is peculiar in the circumstance that both complainant and defendant derive title, not only from Mr. Bradley, but also from Mrs. Genung. It is this which differentiates it from most of the cases in our reports.

The complainant's chain of title is as follows: Mr. Bradley conveyed to Mrs. Genung in 1882. Mrs. Genung conveyed to Frank Genung in 1893, and he conveyed to complainant in 1895.

The defendants' chain of title is as follows: Bradley conveyed to Mrs. Genung in 1877. Mrs. Genung mortgaged to the Mutual Life Insurance Company in 1888. On foreclosure of this mortgage, Wooley, sheriff, conveyed to Berry in 1896. Berry conveyed to the Asbury Park bank in the same year. The bank conveyed to Stroud, who, in 1906, conveyed to defendant Anna L. Harvey.

The question is whether the complainant can avail himself of the covenant made by Genung to Bradley in 1877. There was no restrictive covenant in the mortgage from Genung to the insurance company, none in the sheriff's deed, none in the deed from Berry to the bank, and none in the deed from Stroud to defendant. There was such a covenant in the deed from the bank to Stroud.

In *Leaver* v. *Gorman, 73 N. J. Eq. (3 Buch.) 129*, I had occasion to examine the cases, and I summed up the result of them as follows: "A court of equity will restrain the violation of a covenant entered into by a grantee, restrictive of the use of the lands conveyed, not only against the grantee-covenantor, but against all subsequent purchasers having notice of the covenant, whether it run with the land or not. There is, however, this distinction: The original grantor, in imposing the covenant upon the grantee, either may or may not bind himself. If he does not bind himself, then his grantee, having no right of action against him, cannot pursue any other grantee to whom he may subsequently convey the whole or a part of the remaining land." There is an exception to this rule, that a prior grantee cannot

sue a subsequent, where a general scheme is proved, but neither in that case (which was an Asbury Park case) nor in this was any such scheme shown to exist. The exception may therefore be dismissed from view.

In the case in hand, Bradley conveyed the defendants' lot first. Had he afterwards conveyed the complainant's lot to any one but Mrs. Genung, the complainant's right to an injunction would have been clear. But he did not. He conveyed both lots to Mrs. Genung. The situation, after these conveyances, was this: Bradley himself could, in respect of either lot, have sued Mrs. Genung at law for any violation of the covenant. His right thus to sue was absolute. But in equity it was subject to this restriction. He must have shown, not merely technical violation, but also substantial injury to the land that remained to him. This phase of the subject was considered by Vice-Chancellor Green in the elaborate opinion which he delivered in the leading case of *DeGray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. (5 Dick.) 329.* I will not, therefore, do more than state the reason of the difference, which is this: If grantor has no remaining lands, he has nothing that needs protection by injunction, and, consequently, the remedy at law is adequate.

Now, Mr. Bradley, when, in 1877, he conveyed the defendants' lot to Mrs. Genung, was the owner of complainant's lot, and no doubt the owner of more land on the same street. So he had, at that time, property to be protected. It was certainly an advantage to him as such owner to have been in a position to have prevented Mrs. Genung from building up to the street line and so depriving his property of light and air and perhaps of other benefits. But when, in 1882, he sold the lot to Mrs. Genung its situation with respect to light and air ceased to concern him. He could not have come into this court and asked for relief in respect of that lot, whatever might have been his right in respect of any other property owned by him, if he then owned any.

Then we come to the case of Mrs. Genung. While Bradley remained the owner of complainant's lot, Mrs. Genung could not have built beyond the line, because she would have injuriously affected it, but when, in 1882, she became its owner, she could

do as she pleased, subject to her liability at law, unless, by doing so, she injuriously affected some other property of Mr. Bradley. There is absolutely no proof that in 1882, or afterwards, Mr. Bradley had any property that would have been injuriously affected by so building, or, for that matter, outside of common report, any proof that he was the owner of any other property on that street. I have already said that there is no proof of any general scheme. And so, in 1882, the situation was this: Mr. Bradley might have sued at law for a violation of the covenant, but had no sufficient interest to sue in equity. Mrs. Genung could have built over the line without interference from this court, unless it could be said that as owner of complainant's lot she might have sued herself as owner of defendants' lot, which is absurd.

Bradley's right having ceased, and Mrs. Genung having no right to sue herself, if complainant now has any right under the covenant, it must be because it has been in some way or other revived. Now, there is absolutely no evidence of revivor. On the contrary, it appears that when Mrs. Genung mortgaged defendants' lot to the insurance company, she not only did not re-impose the covenant for the protection of the lot which became complainant's lot, but she inserted in the mortgage a covenant of warranty of peaceable possession. If, after having given the mortgage, she had attempted to derogate from her grant, she could not have succeeded, but in point of fact she never did. She made no other conveyance of defendants' lot, but permitted it to be sold in the foreclosure proceedings, and the purchaser at the sale acquired all the title and interest that Mrs. Genung had when she mortgaged.

It is argued that the mortgage was a mere pledge; that it subsisted as such when Mrs. Genung conveyed to complainant's grantor; and that as he was not made a party to the foreclosure, his right to the benefit of the covenant was not foreclosed. The fallacy of the argument lies in the assumption that the right to sue existed in Mrs. Genung after she had acquired title to both lots; that after she mortgaged, she possessed an equity of redemption not only in the land but in the covenant that would,

had complainant's lot remained in Bradley's hands, have barred the land. But, as I have already shown, unity of ownership in Mrs. Genung extinguished her right to sue—she could not, in her character of owner of the one lot, sue herself for violating the covenant as owner of the other.

Complainant relies upon *Winfield* v. *Henning, 21 N. J. Eq. (6 C. E. Gr.) 188*: The case bears some resemblance to the case in hand. There the covenant was that certain houses should be set back ten feet from the street line. The deed conveyed four lots. The grantee erected five houses upon them. He first conveyed one of the houses to a grantee through whom complainant derived title, and then another house to a grantee through whom defendant derived title. The defendant was restrained from building over the restricted line. It was proved that the original grantor, Coles, was the owner of other property in the neighborhood, for the benefit of which the covenant appeared to have been given. The chancellor said: "In a suit by the grantors there would be no question but that this stipulation would be enforced against any owner of this tract or any part of it who derived his title through this deed. * * * Both parties are bound to the grantors in the Coles deed to keep this front free from buildings. Each is subject to the easement over his lot in favor of those subsequently deriving title from Coles, and each is equitably and justly entitled to the advantage which the observance of this stipulation by his neighbor may be to him." From a perusal of the opinion it is apparent that the chancellor based the equity of complainant's case upon the fact that the original grantor could, by reason of his ownership of other land, enforce this covenant against both parties. Here it does not appear that Mr. Bradley has, or in 1893 when complainant's grantor took title had, any such right. It was not the existence merely of a covenant suable at law that gave the right, but the fact that Coles, the covenantee, as the owner of nearby property—property that was injuriously affected by the breach of the covenant—could have relief in equity for the protection of that property. The complainant was put in Coles' shoes.

As the present case lacks this all-important element, it is obvious that *Winfield* v. *Henning* is not a precedent in point.

I may add that in view of the numerous discussions which this important subject has undergone since that case was decided, it may be questionable whether the chancellor's suggestion that the. case was one of apparent and continuous easement can be agreed to. If an owner has two lots, having houses on the same line and sells one of them, using nothing but the ordinary language of conveyancing, it could hardly be claimed that there has arisen, by implication from the circumstance that both houses stand on the same line, an apparent and continuous easement in favor of either. I do not see how the existence of a covenant held by a third party which would enable that third party to enjoin the owners from building beyond the line, to the detriment of his (the third party's) land, could create an easement in each of the two lots for the benefit of the other. It seems to me that if it create any easement (and it has been held that it does not)—*Brewer* v. *Marshall, 19 N. J. Eq. (4 C. E. Gr.) 537; Hayes* v. *Waverly and Passaic Railroad Co., 51 N. J. Eq. (6 Dick.) 345, 349*—it would be one attaching only to the covenantee's land. And it is to be remembered that in cases of this kind the right to an injunction is not absolute even in the covenantee. He may lose his right by conveying all that he owns or by allowing or encouraging others to violate the covenant, or the character of the neighborhood may change. I shall not pursue the matter further. It is enough to say that the case cited does not apply, for the reason above assigned. I think the bill should be dismissed.