The parties to this suit are owners of adjoining lots, with dwellings on Madison avenue, Madison, parts of a seven-acre tract once owned by Francis S. Lathrop. Mr. Lathrop restricted the tract to two dwellings, and later released the restriction as to number. The defendant is using her dwelling as an inn, and the complainant claims that she is bound by the covenant, and seeks to restrain its violation. In 1866, Mr. Lathrop conveyed the tract to Antoinnette Van Voorst, who covenanted, inter alia, "That no buildings excepting dwelling houses and the necessary outbuildings shall be erected thereon. And at no time shall there be thereon more than two dwelling houses with the outbuildings for the same." The covenant ran to the grantor, "his heirs, executors and administrators [and * * * his assigns, being owners of adjoining property]." At that time Mr. Lathrop owned forty and more additional acres adjoining or in the vicinity, *Page 40 
and presumably others held by grant from him. The title to the tract eventually came to Hannah C. Young in 1897 through mesne
conveyances, and in one or more of the deeds, in the chain of title, the covenant was omitted. In that year Mr. Lathrop, and others in interest, released the restriction on the number of houses to be erected. Mrs. Young split up the tract and conveyed the complainant's lot on Madison avenue to one Duryea in 1900, who, in 1907, conveyed to the complainant. These conveyances were made subject to the restriction. Mrs. Young conveyed defendant's lot, adjoining the complainant's on the east, to one Baker in 1923, and also all her land eastward on the avenue. The covenant was not mentioned in the deed. When Baker conveyed to Ford and he to the defendant, in January, 1927, the conveyances were made subject to the restriction. Mrs. Young disposed of the remainder of the tract west of the complainant's lot free of restriction. Every one who took title to the seven acres, or to lots after it was split up, was amply charged with notice of the rights that sprang from the covenant and are bound to respect it. But bound to whom? At law, not to any one but the covenantee, Mr. Lathrop, "and his assigns, being owners of adjoining property," and to those upon whom their title devolved, if the covenant ran with their lands or was assigned with the grant; and, in equity, not to the complainant, unless it appears that the covenant was taken for the benefit of the owner of the seven acres; and that can hardly be asserted. The covenant is a burden on the owner of the land, not a benefit, and was, obviously, imposed for the protection of the remaining lands of the grantor, to preserve the then rurality of the surroundings. That is evident from the restriction to two dwellings to the tract. The modification of the restriction in this respect did not alter the commitments of the covenant nor change its character as a burden. When Mrs. Young obtained permission to build as many dwellings as she saw fit, and then sold the tract in parcels, there was no new undertaking implied between her and her purchasers, or among theminter sese. Her conveyances to them, subject to the covenant, simply evidenced their obligation to the covenantee, not one to her or to each other. The *Page 41 
reference to the covenant in their deeds, obviously, was only to mitigate the force of the therein warranty of title and covenant against encumbrances. There is nothing from which the inference may be drawn that the restriction to dwellings was thence to be for the benefit of the owners of the parcels. There is nothing that resembles, in the least, a general building scheme, as inScull v. Eilenberg, 94 N.J. Eq. 759, from which it is sometimes implied that restrictive covenants are for the common benefit of the parties to the scheme, and nothing to indicate that the burden was imposed other than to enable the grantee to more advantageously enjoy his remaining possessions. The Massachusetts supreme court in Jewell v. Lee, 14 All. 145, in construing a similar covenant where a plot, as a whole, was restricted, and after being cut up into lots the plaintiff acquired one and the defendant another. Chief-Justice Bigelow, in the course of his opinion, said: "It is doubtless true that such may be the effect of a condition in a class of cases where it is apparent that the condition was annexed to a grant for the purpose of improving or rendering more beneficial and advantageous the occupation of the estate granted, when it should become divided into separate parcels and be owned by different individuals, or when the manifest object of a restriction on the use of an estate was to benefit another tract adjoining to or in the vicinity of the land on which the restriction is imposed. But in the absence of any fact or circumstance to show such purpose or object, a condition annexed to a grant can have no effect or operation either at law or in equity beyond that which attaches to it by the rules of the common law. The benefit of the condition would in such cases inure only to the grantor and his heirs or devisees, and the burden of it would rest on the estate to which it was annexed, and on those who held it or any part of it subject to the condition. Indeed, no restriction on the use of land, and no condition annexed to its possession and enjoyment, can be for the benefit of the grantee or those holding his estate in the granted premises, unless it be as a consideration of some restriction on other land, which may operate as an advantage or convenience in the use and occupation of the granted premises. Inasmuch as *Page 42 
a grantee can restrict the use of land of which he is the owner according to his own will and pleasure, it is clear that he can derive no benefit from a restriction or condition as such imposed on its use or enjoyment by any prior grantor. There is nothing in the case before us which in any degree tends to show that there was any intent on the part of the grantor and grantee in the original deed by which the condition was annexed to that grant of the land now owned by the parties to this suit to give any other or different effect to the condition than that which would result from it at common law. It does not appear that the original grantor had in contemplation the division of the land into separate lots or parcels which would be held by different owners, or that the condition was inserted in the grant for the purpose of creating a restriction on the use of the land as between subsequent grantees of different lots or parcels thereof. So far as we are able to see, there is nothing to indicate that the original grantor of the premises, in annexing the condition, had any intent to regulate or control the possession or enjoyment of the premises for the benefit of subsequent owners or grantees of the estate, or any part of it, but that it was imposed by him solely for his own private and personal benefit, as the owner of other lots in the vicinity, in which the present plaintiff has no interest whatever."
Winfield v. Henning, 21 N.J. Eq. 188, is relied upon by the complainant as authority for her position that the covenant is enforceable as between the several lot owners of the seven-acre tract. There the grantor, to whom the covenant ran, restricted the erection of houses on the plot conveyed to a ten-foot set-back from the street. The grantee erected five houses, set back, and sold one to the complainant and later another to the defendant, who proceeded to extend his building to the street line, and he was enjoined. Chancellor Zabriskie regarded the covenant as annexed to the land and an easement in favor of the covenantee, and held, that though the complainant had no action at law against the defendant, in equity he was entitled to the advantage that would otherwise accrue to him if the covenantee had insisted upon observance, and, having no way to compel the covenantee to *Page 43 
assert his rights, equity would secure the advantages to him at his instance. He cited a dictum of Lord Romilly in Western v.Macdermot, 1 Eq. Cas. (L.R.) 499, and Greene v.Creighton, 7 R.I. 1, as supporting his judgment. The facts inWestern v. Macdermot, supra, were quite dissimilar. Two adjoining owners of dwellings, each holding from the same grantor, covenanted severally with him not to erect in their gardens any buildings higher than the parlor floor, and the court restrained the first grantee from a violation, holding that his covenant was for the benefit of the grantor's remaining lands, and ran with it, and inured to the second (plaintiff) grantee; and in the course of his remarks Lord Romilly said: "I am of the opinion that the owner of every adjoining tenement is also bound by the same covenant and is subject to the obligation to perform it * * * and that the reciprocal right and obligation is handed down from successor to successor indefinitely, so that every one who receives a substantial injury by a breach of the covenant is entitled to the assistance of this court for redress." The English cases treat Western v. Macdermot as a building scheme case. In Austerberry v. Corp. of Oldham, 29 Ch. D. 750, 777, Lord Cotton observed that the covenant in Western v.Macdermot was much more pointedly and directly for the benefit of the plaintiff's land than the one before him, the evidence being that it was to prevent the adjoining land being made less commodious by the erection of buildings on the land of the covenantor. In Nottingham Patent Brick and Tile Co. v. Butler,15 Q.B.D. 261, Judge Wills looked upon the covenant in Western
v. Macdermot as within the building scheme class, the intention being that the covenant should be for the common benefit. And so did Vice-Chancellor Hall in Renals v. Cowlishaw, 11 Ch. D.866, 870. In Rogers v. Hosegood, 2 Ch. D. (1900) 388,397, Justice Farwell likens the case to one where there is no general scheme, but various persons enter into a similar covenant with reference to lands that are adjoining to one another." Vice-Chancellor Stevens, in Genung v. Harvey, 79 N.J. Eq. 57,
indicated disagreement with Chancellor Zabriskie's suggestion of an easement, saying that he could not see how, as in the case before him of a *Page 44 
set-back restriction on a plot as a whole, the restrictive building covenant held by a third party could create an easement in each of the two lots, into which the plot had been divided, for the benefit of the other, and that if the covenant created an easement it would attach only to the covenantee's land, not the covenantor's, and that it had been held that such covenants did not create easements in Brewer v. Marshall, 19 N.J. Eq. 537,
and Hayes v. Waverly and Passaic Railroad Co., 51 N.J. Eq. 345.
And he also questioned the soundness of the chancellor's view that the several grantees taking subject to the restriction imposed upon the plot as a whole, implied a reciprocal obligation to observe the common covenant. The Massachusetts supreme court said in Dana v. Westworth, 111 Mass. 291, "That the judgment of the chancellor of New Jersey in Winfield v. Henning, 6 C.E.Gr. 188, is inconsistent with the decisions of this commonwealth and in England." And in Graham v. Hite, 93 Ky. 474, the court of appeals commenting, that the judgment of the chancellor inWinfield v. Henning was in Dana v. Wentworth, supra, held to be inconsistent with the decisions of courts of Massachusetts and of England, added that the judgment cannot be supported by principle, because it restricts one lot owner in the use of his property for the benefit of another with whom he never contracted, and to whom he never became bound, expressly or by implication.
In Greene v. Creighton, supra, the owners of a tract of land conveyed to the city of Providence a strip for Halsey street, with a covenant that all houses should be set back a given distance from the street line. Later, the defendant acquired a lot on the street and sold it with covenants and was sued for breach. The title was not as warranted and recovery followed. The analogy to Winfield v. Henning is remote.
The doctrine of Winfield v. Henning cannot be followed to sustain an injunction in this case. The covenant may be enforceable by the covenantee, but, as among owners of the several subdivisions of the seven-acre plot, they owe no duty one to the other to observe it, and the bill will be dismissed. *Page 45