22 N.J. Super. 568 (1952)
92 A.2d 492
EMILENE L. AUERBACHER, PLAINTIFF-APPELLANT,
v.
ALAN L. SMITH AND EMELIE B. SMITH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1952.
Decided November 14, 1952.
*570 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. George H. Rosenstein argued the cause for appellant (Mr. Thomas A. O'Callaghan, on the brief).
Mr. Robert Carey, Jr., argued the cause for respondents (Messrs. Carey, Schenk & Jardine, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff brought an action in the Chancery Division seeking to restrain defendants from constructing any building on their premises designed for the practice of medicine, and from making any use of the premises for other than a one-family dwelling. The complaint alleged that the proposed construction and use would violate a restrictive covenant in defendants' chain of title. After a hearing the court entered judgment denying the injunction and dismissing the complaint, and plaintiff appeals.
The defendants, husband and wife, are owners of premises located at the northeast corner of Highland Avenue and Carteret Place, Orange, New Jersey. Plaintiff's premises adjoin immediately to the northeast, on Carteret Place. There is a single-family dwelling on each lot. Both lots are part of a larger corner tract acquired by one Frederick Pring in 1934. This lot, in turn, had been part of a large parcel purchased in 1870 by Margaret Westcott. In 1893 she conveyed the Pring tract to Agnes H. Putnam, subject to the following restriction:
"It is expressly understood and agreed that this conveyance is made and is accepted upon the express condition that no part of said premises or any house or structure erected or to be erected thereon shall be used or occupied for any business or trade whatsoever, nor for any other use than private dwellings and structures appurtenant to such dwellings and the parties of the first part covenant that a *571 restriction clause the same as that last above mentioned shall be inserted in all deeds hereafter executed by them on Essex Avenue or Highland Avenue aforesaid. And the party of the second part covenants that neither she nor her heirs, executors, administrators or assigns or any person deriving title to said premises through or under her or them shall use or occupy, or suffer to be used or occupied any part of said premises or any structure erected or to be erected thereon, contrary to said above condition and restriction." (Italics ours.)
At the time of this conveyance, Westcott owned certain properties fronting on Essex Avenue (now Carteret Place) and Highland Avenue. Westcott subsequently sold these properties to others, but none of the conveyances included the restriction imposed on Putnam and covenanted to be inserted in future deeds.
Putnam retained the corner lot purchased from Westcott until December 1898, when it was conveyed to one Winter by deed incorporating the above-quoted restriction except for the words "and the parties of the first part covenant that a restriction clause the same as that last above mentioned shall be inserted in all deeds hereafter executed by them conveying the property now owned by them on Essex Avenue or Highland Avenue, aforesaid." The entire parcel came into the hands of Frederick Pring after three mesne conveyances. In none of these deeds was the restriction spelled out, although two of them were "subject to restrictions of record."
Pring subdivided the corner parcel into four lots in 1934 when he sold plaintiff her present lot, the conveyance expressly being made subject to the covenants and restrictions as set forth in the deed from Westcott to Putnam. He then sold the second of the four lots in May 1935, the deed mentioning no restrictions. The third lot was conveyed to one Ruth Hulshizer in September 1935, "subject to restrictions of record which are not, however, reimposed." The fourth and final lot was sold two months later, the deed being silent as to restrictions. The Hulshizer lot eventually came into the ownership of defendant Alan L. *572 Smith in 1949, there having been two intervening conveyances, each made subject to existing restrictions of record, if any. Smith's deed contained the clause: "subject to restrictions of record and such facts as an accurate survey will reveal."
Smith is a medical doctor and desires to practice his profession from his home. Having decided to enlarge his dwelling for this purpose, he consulted an architect who then proceeded to draw up plans for a one-story, five-room addition designed for the reception and treatment of medical patients and having a separate entrance for such patients. These plans were submitted to plaintiff as a matter of courtesy. She immediately protested that for Dr. Smith to use his home for his medical practice would violate the restriction limiting defendants' use of their premises to that of a private dwelling. Smith nonetheless proceeded with his project. The plans were modified to comply with certain provisions of the zoning ordinance of the City of Orange, the city building inspector approved them, and the necessary building permit issued in due course. Plaintiff's protests having proved futile, this action ensued.
The Chancery Division judge (19 N.J. Super. 191 (Ch. Div. 1952)) stated the issue as being whether the practice of medicine by defendant "violates the restriction and is to be considered a business or trade." He concluded that "business or trade" cannot be held to include the practice of medicine, so that Smith's proposed use of the addition to his dwelling would not violate the restriction. He did not, however, consider the effect to be given the other words of the restrictive covenant, "nor for any other use than private dwellings." Reaching the conclusion he did, the judge appears to have found it unnecessary to consider whether the covenant itself was valid and operative as to defendants. Our approach to this appeal requires determination of the latter question.
Plaintiff does not rely upon the existence of a neighborhood scheme, nor could she. Westcott established none, *573 nor did Pring some 40 years later as to his four-lot development. Such a scheme, to be effective and enforceable, must have certain characteristics. It must be universal, the restrictions applying to all lots of like character brought within the scheme. It must be reciprocal, the restrictions constituting a benefit to all lots involved which are subject to the burden imposed. It must be reasonably uniform as to the restrictions imposed; they need not be identical, but any variations must be such as not to create an inequitable burden or benefit. Weinstein v. Swartz, 3 N.J. 80, 86 (1949); Scull v. Eilenberg, 94 N.J. Eq. 759 (E. & A. 1923).
We are concerned here with what is called (though technically not correctly) an equitable easement  often referred to as a "negative easement"  imposed by Westcott in the Putnam conveyance. The simple issue presented is whether that easement is enforceable as between the parties who took under Pring, owner by mesne conveyances of the original corner lot held by Putnam.
When Pring took title in 1934 Westcott, if alive, could not have sued in equity to enjoin violation of the covenant. Assuming she had imposed the restriction in 1893 for the benefit of her remaining lands, she no longer had a sufficient interest to maintain such an action, all her property having been sold off by 1911. Genung v. Harvey, 79 N.J. Eq. 57 (Ch. 1911). Pring could have built and used a structure for other than a private dwelling without interference from this court, unless it could be said that as owner of what is now plaintiff's lot he might have sued himself as owner of defendant's lot  a manifestly absurd result.
If plaintiff now has any right under the covenant, it must be because the covenant has in some way or other been revived. There is no evidence that Pring sought to revive the Westcott restriction. As already noted, his conveyance of the first of the four lots in the subdivided tract to plaintiff was made subject to that restriction. There was *574 no mention of the restriction in his subsequent deeds covering the second and fourth lots. The conveyance of the third lot to defendants' predecessor in title, Hulshizer, was subject to restrictions of record which, however, were expressly not reimposed. Under such circumstances plaintiff could not have restrained Hulshizer, a subsequent grantee, from doing what defendants propose to do, nor can she restrain the defendants. Puddington v. Vielbig, 103 N.J. Eq. 39 (Ch. 1928); Korn v. Campbell, 119 App. Div. 401, 104 N.Y.S. 462 (App. Div. 1907), affirmed 192 N.Y. 490, 85 N.E. 687 (Ct. App. 1908); 7 Col. L. Rev. 623 (1907). See 2 American Law of Property (1952), § 9.34, p. 432; 3 Tiffany, Real Property (3rd ed. 1939), § 865, p. 500, and comment thereon in Clark, Real Covenants and Interests Which "Run with Land" (2d ed. 1947), p. 173, note 12. Cf. Genung v. Harvey, 79 N.J. Eq. 57 (Ch. 1911); Jewell v. Lee, 14 Allen 145 (Sup. Jud. Ct. Mass. 1867); Wright v. Pfrimmer, 99 Neb. 447, 156 N.W. 1060 (Sup. Ct. 1916).
The situation in the Puddington case was this: In 1866 A conveyed a seven-acre tract to B who covenanted that no buildings except dwelling houses and necessary outbuildings would be erected thereon, and at no time would there be more than two dwellings with their outbuildings. The covenant ran to A, his heirs, executors and administrators, and "his assigns, being owners of adjoining property." At that time A owned 40 or more acres adjoining or in the vicinity, and presumably other persons held by grant from him. C became owner of the tract in 1897 through mesne conveyances, the covenant being omitted in one or more of the deeds in the chain of title. In that year A and others in interest released the restriction on the number of houses to be erected. C split up the tract and conveyed a lot to D who, in 1907, conveyed to complainant, these conveyances being made subject to the restriction. In 1923 C sold an adjoining lot and her land to the east thereof to E, the covenant not being mentioned in the deed. E then sold the *575 adjoining lot to F; F sold to defendant in 1927; both conveyances were made subject to the restriction. C then disposed of the rest of her land west of complainant's lot free of the restriction. Complainant brought a Chancery action to restrain defendant from using her dwelling as an inn, in violation of the covenant. In dismissing the bill of complaint the court held (at pages 40-41):
"* * * Every one who took title to the seven acres, or to lots after it was split up, was amply charged with notice of the rights that sprang from the covenant and are bound to respect it. But bound to whom? At law, not to any one but the covenantee, Mr. Lathrop, [A], `and his assigns, being owners of adjoining property,' and to those upon whom their title devolved, if the covenant ran with their lands or was assigned with the grant; and, in equity, not to the complainant, unless it appears that the covenant was taken for the benefit of the owner of the seven acres; and that can hardly be asserted. The covenant is a burden on the owner of the land, not a benefit, and was, obviously, imposed for the protection of the remaining lands of the grantor, to preserve the then rurality of the surroundings. * * * When Mrs. Young [C] obtained permission to build as many dwellings as she saw fit, and then sold the tract in parcels, there was no new undertaking implied between her and her purchasers, or among them inter sese. Her conveyances to them, subject to the covenant, simply evidenced their obligation to the covenantee, not one to her or to each other. The reference to the covenant in their deeds, obviously, was only to mitigate the force of the therein warranty of title and covenant against encumbrances. There is nothing from which the inference may be drawn that the restriction to dwellings was thence to be for the benefit of the owners of the parcels. There is nothing that resembles, in the least, a general building scheme, as in Scull v. Eilenberg, 94 N.J. Eq. 759, from which it is sometimes implied that restrictive covenants are for the common benefit of the parties to the scheme, and nothing to indicate that the burden was imposed other than to enable the grantee to more advantageously enjoy his remaining possessions. * * *" Citing Jewell v. Lee, 14 Allen 145 (Sup. Jud. Ct. Mass. 1867).
The text of 5 Restatement of the Law of Property (1944), § 527, Comment (c), p. 3183, is appropriate to our discussion:
"c. Inference arising from severance of land subject to an agreement respecting its use. On occasion, land subject to a restriction as to use may be subdivided and conveyed to different persons without *576 the restriction being in terms renewed. The original restriction, while limiting the owner in his use as against those entitled to enforce it, could in no way limit its use as against himself. He could not as the owner of one part of the restricted area be entitled to enforce the restriction against himself as the owner of another part of it. His grantees may become subject to the original restriction as he was subject to it. They may also become entitled to the benefit of restrictions against other land to the benefit of which he was entitled. But as successors to him they neither become subject to restrictions to which he was not subject nor entitled to the benefit of restrictions to the benefit of which he was not entitled. Accordingly, if they become entitled to enforce restrictions against each other which are similar to pre-existing restrictions it is because such restrictions were newly created upon the subdivision by their common grantor. If not created by the specific terms of the subdividing transaction, their existence must rest on an inference drawn from the circumstances of the transaction. The circumstances under which the subdivision occurred may be sufficient to raise the necessary inference."
At best, the reference in two of Pring's four deeds to restrictions of record was to prevent suit on any warranties contained therein, and not to revive restrictions that may have expired or were no longer enforceable. His refusal to reimpose the restrictions of record when he conveyed to Hulshizer is convincing enough evidence of his lack of intention to revive them.
The case of Winfield v. Henning, 21 N.J. Eq. 188 (Ch. 1870) upheld the right of complainant to enjoin violation of a restrictive covenant under circumstances somewhat similar to those here present. The Chancellor cited a dictum by Lord Romilly in Western v. Macdermot, 1 Eq. Cas. (L.R.) 499, 505 (1866)  a quite dissimilar case  and the early Rhode Island case of Greene v. Creighton, 7 R.I. 1 (Sup. Ct. 1861), as supporting his view. Winfield v. Henning was criticized in Genung v. Harvey, 79 N.J. Eq. 57, 61-62 (Ch. 1911). Vice-Chancellor Backes refused to follow it in Puddington v. Vielbig, 103 N.J. Eq. 39 (Ch. 1928), noting that the Massachusetts Supreme Court had in Dana v. Wentworth, 111 Mass. 291 (Sup. Jud. Ct. 1873) stated that the decision was inconsistent with those of Massachusetts and England. He also cited Graham v. Hite, *577 93 Ky. 474, 20 S.W. 506 (Ct. App. 1892), where the Court of Appeals declared that the Chancellor's decision could not be supported in principle. Winfield v. Henning is not sound precedent and we consider it as overruled.
Plaintiff may not enforce the restrictive covenant against defendants. Since we affirm on a ground other than that relied upon by the Chancery Division, we are not to be considered as approving the reasoning of that court. The cases it cites in support of its conclusion that the practice of medicine from defendants' premises does not violate the restriction may be distinguished. Iselin v. Flynn, 90 Misc. 164, 154 N.Y.S. 133 (Sup. Ct. 1915) involved a covenant against "any kind of * * * business," alleged to have been violated by the maintenance of a dressmaking establishment. Whether the practice of medicine would violate such a covenant was not before the court, so that what it had to say on the subject was pure dictum. "The Nymph" Case, 18 Fed. Cas. No. 10, 383, p. 506 (Circ. Ct. Me. 1834) dealt with the definition of the word "trade," and Judge Story indicated that the learned professions did not fall within that category. Babcock v. Laidlow, 113 N.J. Eq. 318 (Ch. 1933), which concerned a restrictive covenant prohibiting any buildings for the carrying on of any "trade or business noxious, offensive or dangerous to the neighboring inhabitants," held that an undertaking establishment is a business within the terms of such covenant. People v. Kelly, 255 N.Y. 396, 175 N.E. 108 (Ct. App. 1931) dealt with an alleged violation by a music teacher of a zoning provision which excluded "trades and industries" from his area, and the court there held that the teaching of music was not a trade or an industry. Yocum v. Feld, 129 Fla. 764, 176 So. 753 (Sup. Ct. 1937) involved the prosecution of a doctor for the practice of his profession in violation of the Miami ordinance zoning the city as to trades and industry. The Florida court held that the practice of medicine is neither a trade nor an industry.
*578 As indicated, the Chancery Division did not consider that part of the restrictive covenant prohibiting the use or occupation of any house or structure "for any other use than private dwellings." The court in Semple v. Schwartz, 130 Mo. App. 65, 109 S.W. 633 (Ct. App. 1908), construed a covenant almost exactly like the one here in question. After an extensive consideration of American and English decisions dealing with the meaning of the words "business" and "profession," the court concluded that defendant physician's practice of his profession in his home constituted the conduct of a business at his residence in violation of the covenant. In that case the proposed use was limited to a single room in defendant's home. Cf. Koch v. Gorruflo, 77 N.J. Eq. 172, 174 (Ch. 1910); Jolly, Restrictive Covenants Affecting Land (1909), pp. 84-85, based on the English cases; Stewart v. Barber, 182 Misc. 91, 43 N.Y.S.2d 560 (Sup. Ct. 1943); Earle v. Commonwealth of Massachusetts, 180 Mass. 579, 63 N.E. 10, 57 L.R.A. 292 (Sup. Jud. Ct. 1902); Hogan v. Rose, 14 Pa. D. & C. 256 (C.P. 1930).
The judgment is affirmed.