**Paul A. CHRISTIANSEN and Irene A. Christiansen, Appellants,**

v.

**Richard S. CASEY and Vicki Casey, Respondents.**

**No. WD 31487.**

Missouri Court of Appeals, Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1981.

Application to Transfer Denied May 11, 1981.

Richard J. Koury, II, Independence, for appellants.

Hugh E. Clemmons, Jr., Graham & Clemmons, Independence, for respondents.

Before MANFORD, P.J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

This is an appeal on behalf of plaintiffs, Paul A. Christiansen, et al., developers of real estate in Blue Springs, Jackson County, Missouri. The Christiansens' petition for temporary restraining order, temporary and permanent injunctions, and damages for violation of restrictive covenants was dismissed with prejudice by the circuit court for plaintiffs' lack of standing. We reverse.

The Christiansens filed suit August 17, 1979, alleging that in May, 1976, Paul A. Christiansen caused to be prepared and filed a declaration of restrictions against Lots 1–63 in Lake Village, a residential development in eastern Jackson County. Included in the restrictions was a provision giving the Christiansens the power to review and approve all plans for the construction of improvements to any of the sixty-three lots, including any proposed fences. The Christiansens alleged that the Caseys, owners of Lot 5, constructed a fence on Lot 5 with actual knowledge that the fence was violative of the restrictive covenants. The record shows that the parties later stipulated that, at the time of the filing of their petition, the Christiansens no longer owned any of the sixty-three lots in question. The Caseys filed a motion to dismiss based on

the theory that, because the declaration of restrictions vests the right to seek judicial enforcement of the restrictions solely in fee simple title holders of Lots 1–63 inclusive, the Christiansens lacked standing to bring the action. Reserving its decision on Caseys' motion, the trial court held a hearing on the temporary injunction. Subsequently, the defendants' motion to dismiss was sustained.

A decree or judgment of a trial court will be sustained on appeal "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the judgment of the trial court will be reversed if that court erroneously construed the enforcement provision of the restrictive covenants and the applicable law.

Lake Village is a 340-acre residential subdivision of which Lots 1–63 constituted the first tract upon which restrictions were placed. The restricting document, wherein the Christiansens variously described themselves as "owners", "developers", and "undersigned", contains two provisions that give rise to this action, to-wit, in relevant parts:

## SECTION II—APPROVAL OF PLANS AND SPECIFICATIONS OF IMPROVEMENTS PERMITTED

No building shall be erected, placed or altered on any lot until the building plans, specifications and plot plan showing the location of the improvements or alterations have been approved in writing as to conformity and harmony of external design with existing structures, and as to location with respect to topography and finished ground level, by the undersigned or their representative, and a complete set of plans and specifications permanently filed with the developer.

No outside work on the house, except clean-up work, may be performed by the buyers until the house is finished. Builders must be approved by the developer.

No fencing shall be permitted on any lot unless the same is chain link fencing, and approval for all fencing must be obtained in the manner and method as set out in the foregoing paragraph, except that no fencing shall be permitted nearer to the front street line than the rear lines of the residence improvements . . .

and:

## SECTION IV—DURATION AND ENFORCEMENT

These restrictions and covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 2000 . . .

Each of the restrictions and covenants herein set forth shall run with the land and bind the present owners, its successors and assigns and all parties claiming by, through or under them shall be taken to hold, agree and covenant with the owner of said tract, to conform to and observe said restrictions and covenants. The owner or owners of any portion of the above lands shall have the right to sue for and obtain an injunction, prohibitive or mandatory, to prevent the breach of or to enforce the observance of the restrictions and covenants above set forth, in addition to the ordinary legal action for damages . . .

Although the Christiansens later filed identical restrictions covering Lots 64–84, lands adjacent to the tract at issue, they filed neither a master plat nor one master set of restrictions.

At the hearing evidence was presented to establish the fact that when the Caseys purchased Lot 5 in 1979 from a builder other than the developer they had actual knowledge of the restrictions. Indeed, in June, 1979 the Caseys, in accordance with section II of the restrictions, submitted a plan for a swimming pool to Mr. Christiansen for his approval. Following a proce-

dure used for the purpose of dealing with such requests, Christiansen noted in ink on the plan that a chain link fence was to be placed on the perimeter of the lot and stamped his approval.

The Christiansens were out of town during the time of the construction of the fence. When they returned, they discovered that the Caseys had completed a wooden fence placed not at the property line but two feet inside the line. On August 17, 1979, the Christiansens filed this action.

The trial court in its judgment entry of December 7, 1979, found the evidence to be "conclusive that the defendants are in violation of the Declaration of the Restrictions and that they are obligated to follow those declarations, as land owners, even though not signatory to said Declarations." While noting that the "Declarations prohibit the erection of the type fence herein involved, except one approved by the developer, i. e., the Plaintiffs", the trial court found that "a reading of the entire document" led it to believe that the language in section IV vests the right to seek enforcement only in "fee simple title holders".

■ In this case there is no dispute as to the facts. The Caseys are clearly in violation of the restrictive covenants; the Christiansens no longer own land in the restricted tract. The only issue is the propriety of the court's dismissal under the facts. In other words, how will the transfer of an original grantor's interest in land affect his continued rights? We hold that under the facts of this case the grantor being the promisee of the covenantor may hold the grantee-covenantor to his promise. That would seem to be especially compelling when an additional ground of the grantor's claim for relief is that he holds nearby land which, although not under the umbrella of the restrictions, may be materially affected by the violation of the restrictions. *Doerr v. Cobbs*, 146 Mo.App. 342, 123 S.W. 547 (1909).

Missouri courts have long held to the principles that "the law favors the free and untrammeled use of property" and that "when there is substantial doubt as to the wording of the meaning of any restriction, such doubt should be resolved in the favor of free use of any property". *Steve Vogli & Co. v. Lane*, 405 S.W.2d 885 (Mo.1966). In the instant case, however, no controversy exists as to the meaning of the restrictions as they relate to the kind of fence that may be constructed or the place where the fence is to be located. Although the Caseys refer to and rely upon the policy of law which favors the untrammeled use of property, in fact, they do not claim that these restrictions are unreasonable or unduly burden the use of their property. Nor do they claim lack of notice. Such matters are not in issue in this case. The Caseys merely claim that their promise to the Christiansens is no longer enforceable by the Christiansens.

■ Missouri's Supreme Court in *Kerrick v. Schoenberg*, 328 S.W.2d 595 (Mo.1959), defined a real covenant at 600 as

> one having for its object something annexed to, inherent in, or connected with, land or other real property—one which relates to, touches, or concerns, the land granted or demised and the occupation or enjoyment thereof. A covenant is viewed as real in nature, or one that runs with the land, when either the liability to perform the duties therein enumerated or the right to take advantage thereof passes to the assignee of the land.

However, a promise made to the grantor becomes a personal covenant, or benefit in gross, when the covenantor remains liable to the grantor after the grantor has divested himself of the benefited land. *See* 2 American Law of Property § 9.32 (A. J. Casner ed. 1952).

If the plaintiff still owns land that is benefited by the agreement, courts generally have no difficulty in finding the restriction to be a real covenant and the plaintiff to have standing to enforce. But, if the plaintiff no longer owns the benefited prop-

erty, courts find that the covenant is personal rather than real. The question of the standing of an original grantor to sue a covenantee on a personal covenant is an open one in the United States.[1]

In 1973 the court in *Hall v. American Oil Co.,* 504 S.W.2d 313 (Mo.App.), at 316, note 3, declined the "adventure of a full discussion on equitable servitudes and restrictive covenants", but held at 317 that if the restrictive covenant "is ultimately determined to be valid", distinction between real and personal covenants would be inconsequential. Finding that the plaintiffs' petition seeking a declaration of their rights in land encumbered by a restrictive covenant stated a cause of action, the court went on to say that:

> If it is a valid real restrictive covenant, it would run with the land and thus bind plaintiffs. If it is to be designated a personal covenant, it would likewise bind plaintiffs, since by its recordation plaintiffs are presumed to have constructive notice of its existence and would be bound thereby; that plaintiffs disavowed knowledge of the existence of the covenant is of no significance.

Apparently, Missouri aligns itself with the states which allow the original grantor to enforce a restrictive covenant when the covenantor has actual or constructive knowledge of the restriction. This approach, although a departure from the leading English case, *London County Council v.*

*Allen,* 3 K.B. 642 (1914), has practical as well as equitable appeal. Professor Stone[2], in an analysis of such covenants would recommend this position:

> And this, it is submitted, is the view which should prevail. There is no reason why equity, which has made a distinct advance over the rules of property recognizing that equitable rights *in personam* are themselves a species of property worthy of protection, should set limits upon the protection which it affords, by analogy to rules of property developed before Sir Edward Coke's time and which it has actually to some extent supplanted. If the plaintiff has an equitable right on his covenant, that is, one which equity will enforce by compelling the covenantor to perform; if the injury to plaintiff is equally great and the act of the defendant is equally unconscientious, as in the case where a specific performance would give the plaintiff a property right; then equity should not deny relief merely because the result of a specific performance does not fall within one of the categories of property recognized as such by the courts of common law.

The defendants' position, supported by the judgment of the trial court, is that the plain language of section IV of the declaration of restrictions does not reserve to the Christiansens the right to enforce the restriction. Examination of section IV reveals that the language is not so plain and, therefore, may need a bit of construing.

1. *See Oakman v. Marino,* 241 Mich. 591, 217 N.W. 794 (1928), holding that the plaintiff, owner of extensive properties in adjoining additions where identical restrictions were being enforced, had an interest in the enforcement of restrictions in the addition where he had earlier sold land; *Hills v. Graves,* 26 Ohio App. 1, 159 N.E. 482 (1927), in which the court found the promisee still owned adjacent property which would be damaged by the violation of the covenant; *Van Sant v. Rose,* 260 Ill. 401, 103 N.E. 194 (1913), wherein the court treated the promisee's interest in the restriction as a property interest enforceable even absent damage to the promisee.

  *Contra, Place v. Cummiskey,* 6 A.D.2d 344, 176 N.Y.S.2d 806 (Sup.Ct.1958), in which the court found that no right has ever been sustained in the State of New York to enforce a restrictive covenant where the plaintiff did not own property which would be benefited by such enforcement; *Auerbacher v. Smith,* 22 N.J.Super. 568, 92 A.2d 492 (N.J.App.1952), holding that when the grantor disposed of her remaining lands benefited by the restriction, she no longer had a sufficient interest to maintain an action for breach of covenant; *Boyd v. Park Realty Corp.,* 137 Md. 36, 111 A. 129 (1920), holding that a company which restricted lots and sold them could no longer enforce the restrictions.

2. Stone, *The Equitable Rights and Liabilities of Strangers,* 18 Colum.L.Rev. 291, 313 (1918).

This court finds that paragraph 2 of section IV, as quoted earlier in this opinion, is unclear and ambiguous in the use of the words "present owners" and "owners". The first sentence appears to bind the present owners, at that time the Christiansens, as well as their successors and assigns to the restrictions and covenants. The second sentence in referring to "owner or owners" does not identify them as being the present owners or their successors and assigns. The court in *Grantham v. Rockhurst University*, 563 S.W.2d 147 (Mo.App.1978), provides guidance for this court at 150:

> In construing ambiguous contracts the objective is to ascertain and render effective the mutual intent of the parties; and to achieve this objective the court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, *the practical construction the parties themselves have placed on the contract by their acts and deeds*, and other external circumstances which cast light on the intent of the parties ... so long as that evidence is not contradictory of, repugnant to, or inconsistent with the terms of the contract. (Emphasis added; citations omitted.)

In *Cook v. Tide Water Associated Oil Co.*, 281 S.W.2d 415 (Mo.App.1955), Judge Stone at 419, 420 summarized the applicable Missouri law when construing restrictive agreements.

> However, relying upon the well-established principle that restrictive covenants are not favored in law and that, where there is reasonable and substantial doubt as to the meaning thereof, such doubt is to be resolved in favor of the free and untrammeled use of property, defendant's counsel earnestly and ably argue that the bond was the personal obligation of Independent [covenantor] and did not run with the land. In considering this contention, we bear in mind that construction of a restrictive agreement is governed by the same general rules which are followed in construing any contract or covenant; that the construction of an agreement of doubtful meaning should be such as is fair and reasonable between the parties—"a reasonable and natural construction, one that the parties would, as reasonable and intelligent men, be likely to make, and not a useless or whimsical contract resulting in no good to either party"; and, that " '(c)ommon sense and good faith are the leading characteristics of all interpretations.' "
>
> . . . .
>
> But, notwithstanding the fact that all of the foregoing principles must be accorded their proper place, the primary and cardinal rule, which permeates and pervades the entire field of construction, is that the court should ascertain the intention of the parties and then give effect thereto unless it conflicts with some positive rule of law. *That greater regard is to be accorded to the clear intention of the parties than to any particular language used in attempting to express that intention is equally true in interpretation of restrictive covenants or agreements, bonds, and contracts generally.* (Footnotes and citations omitted; emphasis added.)

The Caseys unquestionably had constructive knowledge of the restrictive covenants as well as actual knowledge of the developer's power to approve or disapprove of the proposed fencing. Christiansen gave additional notice and reminder of the restrictions when the Caseys submitted their plans for a swimming pool. This court in *Sherwood Estates Homes Ass'n v. Schmidt*, 592 S.W.2d 244 (Mo.App.1979), noted that the "power to enforce [a restriction] is a legally sterile power if it does not include the power to grant or withhold approval of plans and specifications falling within its purview". Conversely, under the facts of this case, power to grant or withhold approval of plans might very well be a legally sterile power if it does not include the power to enforce the restriction.

The Supreme Court of Missouri in *Toothaker v. Pleasant*, 315 Mo. 1239, 288 S.W. 38 (1924), furnished further guidance in the construction of restrictive covenants when it said at 42:

> [T]he court must endeavor, if possible to arrive at the intention of the parties to the original deed by which the restrictive covenant was created ... The intention of the parties must be determined from the language of the covenant itself *considered in connection with the surrounding circumstances at the time the covenant was made*; * * * or, as it is sometimes said, from the language of the covenant itself considered in the light of the entire context of the instrument containing it. (Citations omitted and emphasis added.)

Consideration of the surrounding circumstances at the time this covenant was made must include the fact that the sixty-three lots against which these restrictions were filed were part of a larger adjacent neighborhood in which the Christiansens owned property. Their nearby land provides the Christiansens with a continuing interest which would seem to support the concept that even if the grantor has divested himself of fee simple interest in the lots covered by the restrictions, he retains a property interest in their enforcement. (*Hills v. Graves*, note 1 *supra*). Moreover, as indicated above, we see no reason why equity should not allow these plaintiffs to enforce the covenant, be it real or personal. (*Hall v. American Oil Co., supra*).

Since neither party nor the court below addressed the question whether under this declaration of restrictions the developer had a duty to proceed at his expense on behalf of the grantees to enforce the restrictions, we do not undertake to do so. We leave to future plaintiffs and defendants to argue the question of the continuing duty of a subdivision's developer in absence of delegation of his duties to a homes association, or the like.

Under the facts of this case we find the covenants, made for the benefit and protection of the plaintiffs, may be enforced by them. The judgment of the trial court is reversed and the case remanded for further proceedings.

All concur.