**REHARD et, Plaintiffs-Appellants, v. RINI, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23343.   Decided July 11, 1955.

Max D. Gustin, Cleveland, for plaintiffs-appellants.
Barragate, Wedren, Gottermeyer & Fahrenbach, Cleveland, for defendant-appellee.

(STEVENS, PJ, HUNSICKER, J, DOYLE, J, of the Ninth District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

This case involves the law relative to restrictive covenants in a deed.

Prior to the year 1923, The Lake Shore Boulevard Co. owned a parcel of land in the then village of Euclid, Ohio, which it subdivided into a number of sublots and recorded a plat thereof. The plat contained no covenants of restriction.

On April 21, 1923, the Company-Owner transferred title to all of sublot 47 to William A. and Mary Meyer. This lot fronted on Lake Shore Boulevard (a highway running generally northeast and southwest)

a distance of 152.74 feet, abutted on the intersecting East 266th Street (a street running north and south), and extended to a depth of 256.25 feet on the east side and 178.59 feet on the west side.

The deed contained the following restrictive covenant:

"The above-described premises are conveyed subject to the following reservations, limitations, restrictions and conditions, which, in favor of the within named grantor, shall be binding upon the within named grantees, their heirs, legal representatives and assigns:

"Said premises shall be used for private residence purposes only, meaning thereby a residence to be occupied by one family; not more than two such residences shall be erected upon said premises; no building shall be erected on said premises nearer than thirty-five (35) feet to the westerly line thereof nor nearer than ten (10) feet to the easterly line thereof, nor nearer than fifty (50) feet to the front and street line of Lake Road (Lake Shore Boulevard), and no residence costing or having a value of less than three thousand dollars ($3,000) at the time of its erection shall be erected upon said premises. No barn, shed, outhouse or other building except a residence, shall be placed nearer than one hundred twenty-five (125) feet to the line of Lake Road (Lake Shore Boulevard), nor nearer than one hundred (100) feet to the westerly line of said premises."

In the years following the conveyance to the Meyers, the property was transferred to various persons and companies, and, in the year 1927, was transferred to Iona M. Neff, who divided the sublot into three parcels as noted in the foregoing diagram. At or about this time a single-family dwelling was erected on each of two of the parcels—"1" and "3" in the diagram. The other parcel, No. 2, has been and is free from buildings.

Parcel No. 1 was conveyed to various persons, and finally reached Lester M. and Afelia A. Lacey, two of the appellants in the present action. Parcel No. 3 finally passed to Harry E. and Suzanne Rehard, the other two appellants in this action. Parcel No. 2, through several conveyances, is now owned by Frances C. Rini, the appellee.

Subsequent to the time when the village of Euclid became a city, it passed an amendment to its zoning ordinances which changed the use of property 150 feet to the east of East 266th Street, on the south side of Lake Shore Boulevard, from a residence use to a business use. This property mentioned in the ordinance, applied to parcel No. 2 as shown in the diagram. The ordinance likewise applied to a strip of 150 feet on the south side of Lake Shore Boulevard and west of East 266th Street. On the latter-described land (not a part of sublot 47), several places of business were built. No business uses, however, have even been made of the zoned part of parcel No. 2 in sublot 47, and the only use ever made of sublot 47 was for the erection and occupancy of the residences on parcels No. 3 and No. 1, respectively.

In the year 1952, Rini, the owner of parcel No. 2 applied to the city of Euclid for a permit to build a commercial block on her property, to face on both Lake Shore Boulevard and East 266th Street. As heretofore noted, this property was zoned for business. The application was denied. However, subsequently, pursuant to a hearing in the Common

Pleas Court of Cuyahoga County, a mandatory injunction was issued, directing the city of Euclid to issue the permit.

Following this order of the court, the Rehards, husband and wife, owners of parcel No. 3, and the Laceys, husband and wife, owners of parcel No. 1, brought the instant action in injunction against Rini, to restrain her from erecting a business block on her property. They alleged that "uniform restrictions were imposed upon each and every, all and singular, parts of said sublot No. 47, and pursuant to a general and uniform plan for the development of said property in a strictly residential and noncommercial manner, and for the benefit of the successive owners thereof; that said restrictive provisions were at all times on public record, appearing in the plaintiffs' and defendant's chains of title, and were actually, or should have been, at all times known to the defendant; that, relying upon said restrictive provisions, two single high-grade residences of substantial value, now owned by plaintiffs Rehard and Lacey, respectively, have been built and now exist upon said sublot No. 47." The petition continued by pleading that, unless an injunction was issued against the defendant, enjoining her from constructing a commercial building designed to house retail stores, she will use her property "in direct violation of the uniform plan for the development * * * of said sublot No. 47, and of the restrictions upon the use thereof imposed * * * for the purpose of insuring said development, and that the erection thereof would seriously impair the value of plaintiffs' causing them irreparable damage, for which they have no adequate remedy at law." The pleaders concluded by praying for an injunction.

Issues were joined by the answer of the defendant. Upon trial in the Court of Common Pleas, judgment was entered for the defendant. The plaintiffs have appealed to this court on questions of law and fact. We have entertained the appeal for trial de novo.

It appears from the agreed statement of facts that: the appellants Rehard obtained title to parcel No. 3 in 1945 from the Union Savings & Loan Co.; the deed from the grantor recited that the property was "free and clear from all incumbrances whatsoever except restrictions and conditions of record, if any, zoning ordinances, if any, and taxes and assessments, special and general, for the year 1944, and thereafter, which taxes and assessments the grantor assumes and agrees to pay."

The appellants Lacey became the owner of parcel No. 1 in 1951 by virtue of a warranty deed from one Budinsky, who had become the owner in 1943. Budinsky's deed from his grantor recited that the property was free and clear from all incumbrances whatsoever except restrictions and conditions of record, if any." Budinsky's warranty deed given to the Laceys recites somewhat similar language, as follows: "free from all incumbrances whatsoever except taxes for 1951 and thereafter, conditions, restrictions and limitations of record."

The appellee, Rini, acquired title to parcel No. 2 in 1947 by warranty deed from the Union Savings & Loan Co. (As heretofore noted, this parcel of original sublot No. 47 has never been built upon nor used for business or residence purposes.) The deed to Rini contained the following language: "free and clear from all incumbrances whatsoever except restrictions and conditions of record, if any, zoning ordinances,

if any, and taxes and assessments, special and general, for the year 1947, and thereafter."

The question for solution, we think, may be, in simple terms, stated as follows: Can the restrictive covenant contained in the deed from the Lake Shore Boulevard Co., the original allotter, to William A. and Mary Meyer, the original purchasers of sublot No. 47, be enforced by the Laceys and the Rehards, present owners, respectively, of a portion of the original sublot, against Frances C. Rini, the present owner of the balance of said sublot?

There has been a great amount of legal writing on the subject of restrictive covenants in deeds, and, while a cursory reading of the many cases might lead one to believe that they are in hopeless conflict, nevertheless, when the circumstances of each case are understood, there is revealed a pattern of surprising uniformity.

One class of cases permits any grantee of a lot to enforce, as against another grantee of another lot, restrictive covenant when the restrictions are so drawn that each purchaser covenants and agrees, for the benefit of every other lot owner, that he will observe the restrictions; or, when a purchaser of a lot, against whom the restrictions are sought to be enforced, has notice of a general plan of restrictions and purchases his lot with reference thereto. Such notice is shown in many cases when the recorded plat contains the general scheme or plan, or when the allotter in his deeds covenants that all sales of lots in his allotment shall be subject to the like restrictions.

The law governing this class of cases was pronounced by the writer of this opinion in the case of **Lopartkovich v. Rieger, 66 Oh Ap 332.** In that case the covenant was not enforcible by any grantee as against any other, for the reason that there was no mutuality of covenant or consideration which bound each, or gave to each an appropriate remedy. In other words, such covenants were not entered into by the grantees for their mutual protection and benefit.

Another class of cases is that in which the grantor exacts the covenant from his grantee, for the benefit and protection of neighboring lands which the former retains. In this class, grantees cannot enforce the covenant as against each other, although the grantor and his assigns may enforce it against either or all of the grantees of the property burdened with the covenant.

A third class embraces mutual covenants between owners of adjoining lands, in which the restrictions placed upon each produce a corresponding benefit to the other. In such cases, either party or his assigns may invoke equitable aid to restrain a violation of the covenants.

See the leading case of Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, and authorities therein cited, for the above classifications.

An analysis of the various items of conveyance of the property in question, commencing with the grantor and allotter, The Lake Shore Boulevard Co., shows no uniform plan of restrictions under the first classification above, nor do the facts bring it within the other classifications stated.

It appears that the servitude under consideration was made solely for the benefit of the original grantor and his successors, who alone might enforce it.

It is obvious that each of the present owners of the parcels carved out of the original sublot No. 47 is charged with notice of the rights which spring from the covenant, because it is in their chain of title. Each of them could be liable to their common grantor upon the covenant, if such grantor instituted an action for the benefit of its remaining lands. As stated, they might be liable to their common grantor, but does it follow that they are liable to each other under the covenant?

Each of the parties traces his or her title to his or her portion of the subdivided sublot back to the original promisors (the Meyers). The parcels of land of each are subject to the burdens of the same servitude. After the land was conveyed by The Lake Shore Boulevard Co., the promisee, to William A. and Mary Meyer, the said promisors, to say that the Meyers could assert against themselves a covenant in favor of a part of their land against another part of their land, to all of which at the same time they held title, would indeed by anomalous.

"* * * Here we have the situation where the titles of both the complainant and the defendant are traced back to the promisor. In other words, the promisor or his grantee has resubdivided the burdened land without repeating the restrictions in the resubdivision, so that the complainant and defendant each own a portion of this burdened land and are seeking to enforce the original agreement against each other. Each traces his title in his portion of the resubdivided land back to the original promisor. Thus, the lot of each is subject to the burden of the same equitable servitude. The problem then arises as to whether they are also entitled to the benefit of this same equitable servitude as against each other. * * * Any decision which permits the owner of one portion of the burdened land to enforce the servitude against the owner of another portion of the same burdened land cannot be justified under either the property or contract theories of enforcement. * * *"

II American Law of Property, Sec. 9, 34; citing Graham v. Hite, 93 Ky. 474, 20 S. W. 506; Jewell v. Lee, 14 Allen (Mass.) 145; Wright v. Pfrimmer, 99 Neb. 447, 150 N. W. 1060; Puddington v. Vielbig, 103 N. J. Eq. 39, 142 Atl. 171; Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687.

If, in the instant case, new servitudes had been created at the time the original lot was subdivided and the restrictive agreements were repeated, a different question would arise. Under such circumstances, new servitudes would be involved and there would not be presented the problem of the instant case of enforcing the original servitude.

In reaching the conclusion that the injunction should be denied, we further cite 7 Columbia Law Review 623, and 3 Tiffany on Real Property (Third Ed.), Sec. 865, at p. 500. See also: 5 Restatement of the Law of Property, Sec. 527, Comment "c," at p. 3183.

Judgment for the appellee.

STEVENS, PJ, HUNSICKER, J, concur.