BROWN ET AL., APPELLANTS, *v.* THE MIAMI VALLEY HOSPITAL SOCIETY OF DAYTON, OHIO, ET AL., APPELLEES.

(No. 2402—Decided June 6, 1957.)

*Messrs. Smith, Schnacke & Compton,* for appellants.

*Messrs. Shaman, Winer, Shulman & Zeigler* and *Messrs. Landis, Ferguson, Bieser & Greer,* for appellee The Miami Valley Hospital Society of Dayton, Ohio.

*Messrs. Shively, Shively & Shell* and *Messrs. Curtner, Brenton & O'Hara,* for appellee The Lutheran Church of Our Savior.

GUERNSEY, J. This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Montgomery County, Ohio. The essential facts on which the issues of this appeal are based are as follows:

Frederick B. Patterson, hereinafter referred to as Patterson, was the owner of lot 332, part of lot 2654, and lots 2655, 2656, 2657 and 2658 in Oakwood, Ohio, which, together, constituted a large irregularly shaped tract of land of many acres. This large tract of land is divided approximately in half by the crest of a hill which crest meanders from north to south across the tract, the land sloping gently to the east from this crest, and abruptly, then gently, to the west from the crest. Prior to 1935, and approximately in the center of this large tract and immediately to the east of the said crest, Patterson constructed a palatial home in which he resided until 1940. By extensive plantings and landscaping to the east of the crest Patterson developed said portion into a large, and no doubt beautiful, lawn. The portion of the tract west of the crest he left almost entirely in its natural state. In 1925, Patterson sold and conveyed by metes and bounds description a small part of the large tract west of the crest of the hill, subject to certain restrictions therein specified which were to be "binding for a period of thirty (30) years from date" of the deed, and which have now expired. No further conveyances of any of his said property were made by Patterson until 1935, at which time Patterson resumed the sale and conveyance by metes and bounds descriptions of various smaller tracts from his large tract of land. At no time, then or thereafter, did Patterson file in the records of Montgomery County a plat of the parcels of land then and thereafter conveyed. Although public streets were dedicated from time to time, the dedication of same was accomplished by deed and not by plat. The record does not expressly show the existence of any map or plat of a subdivision plan prior to May 1940 (plaintiffs' exhibit No. 106, entitled "Revised Subdivision of Eastern Section Far Hills Oakwood, Ohio Scheme 'D,' Scale 1"-100', Putnam and Woolport, Engineers, Dayton, Ohio, May. 1940"), and some discrepancies exist between the parcels shown on the plan of 1940 and the parcels actually conveyed. From 1935 and thereafter until immediately prior to July 15, 1940,

Patterson sold and conveyed by metes and bounds description 37 separate parcels of land out of the part of the large tract east of the crest of the hill, with only 17 of said conveyances being made prior to 1940. From and after July 15, 1940, Patterson, in disposing of the balance of his land on and east of the crest, sold and conveyed by metes and bounds descriptions some 29 parcels of land, including the tract specifically involved in this action. The dates of each of the conveyances of land to the west of the crest of the hill are not in evidence, but it would appear that this land was disposed of between 1925 and 1947 by nine separate conveyances by metes and bounds descriptions of fairly large parcels of land, most of said land being conveyed without any restrictions being specified in the instrument of conveyance, or, if specified, thereafter released.

Of the 66 parcels of land, including the parcel which is the subject matter of this suit, on and east of the crest of the hill, all but two pieces were conveyed with some restrictive language in the instruments of conveyance. The typical language pertaining to restrictions incorporated in most of these deeds for parcels other than the one which is the subject matter of this action is as follows:

"Said grantee, by the acceptance hereof, covenants and agrees for himself, his heirs, executors, administrators and assigns, to the following stipulations, conditions, and restrictions, which shall be covenants running with the land and which shall be binding for the period to December 31, 1961, viz.:

"First: No buildings, except one (1) single residence and one (1) garage for the same shall be erected on said premises. It is agreed that grantee herein shall submit to the grantor, or his designated agent, plans and specifications for the dwelling house, and garage to be constructed upon said premises, before any construction work is begun on said premises, and such plans and specifications shall be subject to the approval of said grantor, or his designated agent, before such construction work is begun and such approval shall be in writing and signed by said grantor, or his designated agent. Oakwood Zone 'A' residential restrictions shall govern in all other respects.

"Second: All buildings placed upon said premises must be newly constructed, and no building or buildings shall be moved thereon.

"Third: All the conditions contained herein for the use and occupancy of the premises herein conveyed shall attach to and run with the land, and in case of the violation of said conditions, or any of them, it shall be lawful, and the said grantee, for himself, his heirs, executors, administrators and assigns, agrees that the grantor, his heirs, executors, administrators and assigns, parties now owning tracts of land or parties hereafter becoming owner of tracts of land in the vicinity and acquired from this grantor, shall have the right to prosecute an action to enjoin any such violation, or recover damages therefor, or both."

The only differences which we regard as material to the issues herein involved between the typical restrictions, above quoted, and those contained in other deeds for said parcels were that the restrictions pertaining to two parcels were to expire in the year 1965 (thirty years from the date of the deed) and those pertaining to five other parcels were to and did expire on December 31, 1950.

On July 15, 1940, Patterson sold and conveyed by metes and bounds description the 4.46-acre parcel of land on and east of the crest of the hill on which his large residence was located to one Patricia P. MacMillan. We shall hereafter refer to this parcel as the MacMillan parcel. The only restrictive covenants which Patterson placed in his deed to Mrs. MacMillan were as follows:

"Grantor and grantee agree upon the following restrictions for the future development of the premises conveyed herein:

"The grantor has established certain standards of lot size and the kind and type of buildings for the eastern portion of the so-called Far Hills plat extending to Schantz Avenue on the east, being lots of an average size of approximately one-third of an acre each improved by one residence only with or without garage on such lot. Grantee agrees that such portion of the premises herein conveyed, approximately three to three and one-half acres, being the higher portion of the land conveyed, and being the generally eastern section of the premises herein conveyed, will be in the future sold, when and if it is done, in accordance with these same standards as to lot size, one residence and one garage built on each lot being the same minimum

standards that grantor has already established in the eastern area of the Far Hills plat above referred to. Grantee agrees that the northeast corner or section of the premises herein conveyed, which is the lower and wooded area of the premises, containing one to one and one-half acres approximately, will be sold and improved, if at all, in accordance with such minimum standards as to lot size and building requirements which the grantor, or his assigns, shall establish for the wooded area in the western section of the so-called Far Hills plat, being westerly located from the premises herein described. Grantee shall follow as to lot size, kind and number of buildings on each lot, the standards established or to be established by grantor, or his assigns in such westerly and northwesterly sections of the so-called Far Hills plat. However, should grantor have established no standards of lot size or number of buildings on each lot in the western area of the Far Hills plat at the time the grantees herein may decide to sell or improve sections of the premises herein conveyed to them, in that event, the grantees will adhere to the same minimum standards of lot size and one residence thereon as now established on the eastern area of the so-called Far Hills plat, as above referred to.

"It is agreed between the parties that the standards as to lot size and one residence with garage on each lot as established at present on the eastern portion of the Far Hills plat shall be the minimum standards to which both grantor and grantee shall adhere in future improvements in that section and in the easterly section of the premises herein conveyed.

"Grantor and grantee further agree that in the event there is any disagreement as to whether or not such minimum standards are being maintained that such disagreement shall be submitted to the chairman of the Oakwood Planning Board whose decision will be accepted as final. Should the chairman of such board be unwilling or unable to serve then the parties shall agree upon some suitable person to hear and determine such question."

Mrs. MacMillan resided in the mansion on the MacMillan parcel until her recent death, at which time title to the MacMillan parcel passed by devise to the defendant The Miami Valley Hospital Society of Dayton, Ohio, appellee herein. The Miami Val-

ley Hospital Society has contracted to sell and convey the parcel to the defendant the Lutheran Church of Our Savior, also appellee herein, which intends to take possesion of the premises and use same for church purposes, initially making only such changes or alterations in the structures thereon as to meet the minimum building and safety requirements of the city of Oakwood and to make same immediately adaptable for congregational use, together with the construction of some parking areas. The church council has very tentative plans to, at some future time, construct additions to the present structures to make them more adaptable to and desirable for church use. Before this sale and conveyance could be completed, the plaintiffs, appellants herein, being owners of parcels of land to the east of the crest of the hill conveyed by Patterson subject to the typical restrictions expiring on December 31, 1961, suing for themselves and all other property owners similarly situated, brought this action to permanently enjoin the defendant hospital from conveying the MacMillan parcel "otherwise than subject to the residential and other use and improvement restrictions required by the covenant in the deed from" Patterson to MacMillan, and to permanently enjoin defendant church "from improving and using the said real estate for a main church building and general church purposes and from otherwise using it except exclusively for single family residence purposes as provided by said covenant in said deed to Patricia P. MacMillan," and for such other and further equitable relief as may be just.

The lower court, in its entry of judgment, denied the injunctive relief and declared by its judgment that the hospital may proceed to complete its sale to the church and that the church may occupy and use said parcel for church purposes and the doing of all things reasonably necessary and incidental thereto. The lower court indicated further that it does not decide what the defendant church may or may not do with reference to future development or subdivision of said parcel. It is from this judgment that this appeal was taken.

The issues in this case may be summarized as follows:

(1) Do the restrictive covenants in the deed from Patterson to Mrs. MacMillan give the plaintiffs and those similarly situated a right of action for and entitle them to the injunctive relief

sought; and (2) do the restrictive covenants in the deeds for the other parcels of land on and east of the crest of the hill conveyed by Patterson give the plaintiffs and those similarly situated a right of action for and entitle them to the injunctive relief sought?

In determining each of these issues we exclude from those persons similarly situated with plaintiffs all property owners owning parcels conveyed subject to restrictions which have expired by passage of time, for their right of action, if any they had, clearly expired with their restrictions.

A careful examination of the restrictive covenants in the deed from Patterson to Mrs. MacMillan discloses that they constitute by their wording alone a personal agreement by and between the grantor and the grantee therein pertaining only to the "future development" of the MacMillan parcel, without any reference to the rights of any other property owner to enforce said covenants. Indeed, the only provision made for enforcement was that any disagreement as to whether the grantor or grantee is maintaining minimum standards would be submitted to the chairman of the Oakwood Planning Board, or, in certain events, a suitable person agreed upon by the parties. It must be remembered that at the time this conveyance was made Patterson yet had some 28 parcels of land to sell and convey on and east of the crest of the hill, as well as some land to the west thereof. It was definitely to his personal interest and benefit to incorporate such restrictive covenants in his conveyance to Mrs. MacMillan. Moreover, there are no similar restrictive covenants in any of the other conveyances in evidence of his various parcels of land. Even if these personal covenants were to run with the land there is no legal or equitable theory on which the plaintiffs, or persons similarly situated to the plaintiffs, who are all strangers to this particular chain of title, would have a right of action to enforce the restrictive covenants in the deed from Patterson to Mrs. MacMillan.

As will more fully appear hereafter in our discussion of the second of the issues involved in this action, the covenants in the deed from Patterson to Mrs. MacMillan could in no manner be construed as being part of a uniform general plan of restrictions and are strictly of the class of covenants described in

the case of *Rehard* v. *Rini,* 72 Ohio Law Abs., 115, at page 118, as follows:

"Another class of cases is that in which the grantor exacts the covenants from his grantee, for the benefit and protection of neighboring lands which the former retains. In this class, grantees cannot enforce the covenant as against each other, although the grantor and his assigns may enforce it against either or all of the grantees of the property burdened with the covenant."

As to the second of the issues it has long been established in Ohio by paragraph two of the syllabus of the case of *Kiley* v. *Hall,* 96 Ohio St., 374, 117 N. E., 359, L. R. A. 1918B, 961, that:

"A lot owner cannot maintain an action to enforce by injunction the observance of restrictions contained in the deed of another lot owner where it does not appear that the latter purchased his lot with notice of a general plan for the improvement of the lots of the allotment in accordance with the restrictions contained in his deed, or with notice that such restrictions were inserted in his deed for the benefit of the owners of the other lots in the allotment."

In that case, the restrictions contained in the deeds of plaintiff and defendant were identical, whereas in the case before us they were totally different. Even with identical restrictions involved, the Supreme Court concluded in its opinion, at page 384:

"But in the instant case defendant in error failed to show that plaintiff in error when he purchased his lots knew that the restrictions in his deed were for the benefit of other lot owners or that he bought with notice that a plan was to be carried out with respect to the lots sold or to be sold in pursuance of it. Our holding is, therefore, that defendant in error was not in a position to maintain an action to restrain plaintiff in error from violating the restrictive covenants contained in his deed."

In the case of *Adams* v. *Donovan,* 97 Ohio St., 83, 119 N. E., 252, the Supreme Court extended the rule of the *Kiley* v. *Hall case* to the situation where restrictions have been omitted from the deed of the owner against whom injunctive relief is sought, and held:

"Where a general plan of uniform restrictions has been

adopted by the owner of an allotment, and such a plan publicly and generally advertised, and the owners covenant that all sales of lots in that allotment will be made subject to these restrictions, *which restrictions shall be for the protection of every other person who may become the owner of a lot in that allotment,* as well as the grantors, such restrictive covenants may be enforced by injunction.

"Before such restrictions can be enforced against a purchaser whose deed does not contain such restrictions, it must clearly appear by the evidence, that there was such a general plan of uniform restrictions upon all the lots in the allotment; that the deeds for lots in such allotment uniformly contained such restrictions; and that the purchaser had knowledge of such general plan of uniform restrictions at the time he purchased his lot." (Emphasis added.)

The rules established in the cases of *Kiley* v. *Hall* and *Adams* v. *Donovan* are in conformity with the rules pertaining to like situations in most jurisdictions. 26 Corpus Juris Secundum, 1149, Deeds, Section 167(2).

The Court of Appeals of this district has been called upon on at least two relatively recent occasions to apply these rules in the cases of *Smith* v. *Volk*, 85 Ohio App., 347, 86 N. E. (2d), 30, and *Blum* v. *Hodapp*, 87 Ohio App., 45, 86 N. E. (2d), 807. In the former case, the court concluded, among other things, that the fact that restrictions vary slightly in different deeds and that a lot and parcel of land on the edge of the tract is sold without any restrictions does not invalidate the building plan or scheme adopted. In the latter case, the only language pertaining to whose benefit the restrictions were placed in the conveyance was "that no building or part thereof shall be used in any manner so as to be reasonably objectionable to the occupants or owners of neighboring property." In construing this language this court held that the term, "neighboring," meant being near or adjacent, so that such restrictions contained in each deed were not for the benefit of all lot owners in the subdivision but only for the benefit of adjacent lot owners and that the remedy of injunction would not be available to all lot owners of the subdivision, and further held that since the restrictions were only for the benefit of neighboring lot owners, no-

tice of a general plan of restriction could not be imputed to the defendant lot owners.

In the light of these principles, we shall examine the restrictive covenants relied upon by plaintiffs as establishing a general plan of restriction. The operative provisions as to benefit and enforcement are as follows:

"Said grantee, by the acceptance hereof, covenants and agrees for himself, his heirs, executors, administrators and assigns, to the following stipulations, conditions, and restrictions, which shall be covenants running with the land * * *:

"* * *

"Third: All the conditions contained herein for the use and occupancy of the premises herein conveyed shall attach to and run with the land, and in case of the violation of said conditions, or any of them, it shall be lawful, and the said grantee, for himself, his heirs, executors, administrators and assigns, agrees that the grantor, his heirs, executors, administrators and assigns, *parties now owning tracts of land or parties hereafter becoming owner of tracts of land in the vicinity and acquired from this grantor,* shall have the right to prosecute an action to enjoin any such violation, or recover damages therefor, or both." (Emphasis added.)

We note initially that the grantor, Patterson, in no manner covenants to bind himself or any of the land in which he at any particular time still retained title to any of the limitations as to use and occupancy set out in the deeds. But even of more importance is the fact that the only covenant pertaining to enforcement limits rights of action therefor to the grantor (his heirs, executors, administrators and assigns) and owners of tracts of land *in the vicinity* acquired from the grantor. Being the only ones who could enforce the restrictions, they were likewise the only ones protected or benefited by the restrictions. Webster's New International Dictionary (2 Ed.), defines "vicinity" as "quality or state of being near, or not remote" and gives as its synonym the word, "neighborhood." Following the language and holding of this court in the case of *Blum* v. *Hodapp, supra,* we must say:

"With this definition in mind, as well as the legal principle

that when a restriction in a conveyance is doubtful all doubts should be resolved in favor of the free use thereof for lawful purposes by the owner of the fee, we are compelled to say that the restriction contained in * * * [the deeds other than the MacMillan deed] is not for the benefit of all the lot owners in the subdivision, but is only for the benefit of the * * * [grantor Patterson and the neighboring] lot owners.''

Following the rule established by the Supreme Court of Ohio in *Adams* v. *Donovan, supra,* we conclude that since the restrictive covenants in the deeds to parcels other than the Mac-Millan parcel were not ''for the protection of every other person who may become the owner of a lot in that allotment, as well as the grantors,'' the plaintiffs, and all others similarly situated, may not enforce same by injunction against the owner of the MacMillan parcel. See, also, *Lopartkovich* v. *Rieger,* 66 Ohio App., 332, 33 N. E. (2d), 1014. And although we are of the opinion that the wording of the restrictive covenants in the deed from Patterson to Mrs. MacMillan constituted actual notice to her, and at least constructive notice to her successors in title, that a plan of restriction existed pertaining to the parcels of land in ''the eastern portion of the so-called Far Hills plat,'' reference by her, or her successors in title, to said plan would reveal that same was merely for the protection of the grantor Patterson and the owners of land in the vicinity of each parcel conveyed, and was not such a general plan of uniform restrictions as could by such notice impose upon the MacMillan parcel the limitations of such restrictions.

Taking this view of this action it is unnecessary for this court to determine whether the plan of restrictions would otherwise fulfill the requirements for a general plan of uniform restrictions or whether the proposed use of the premises by defendant church would be contrary to the restrictions expressed in the conveyances to plaintiffs, and those owners similarly situated.

We conclude, on the issues joined, that the plaintiffs, and those property owners similarly situated, are not entitled to the equitable relief prayed for either by virtue of the restrictive covenants in the MacMillan deed or by virtue of the restrictive

covenants in the deeds from Patterson for property owned by plaintiffs and those similarly situated.

*Judgment for defendant.*

MIDDLETON, P. J., and YOUNGER, J., concur.

MIDDLETON, P. J., YOUNGER and GUERNSEY, JJ., of the Third Appellate District, sitting by designation in the Second Appellate District.