**SMITH et, Plaintiffs-Appellees, v. SMITH, Defendant-Appellant.**

Ohio Appeals, Ninth District, Summit County.

No. 4881. Decided March 30, 1960.

L. James Harkins, James O. Cross, for plaintiffs-appellees.
James B. Palmquist, Charles P. Courtney, for defendant-appellant.

(HURD, PJ, KOVACHY and SKEEL, JJ, of the Eighth District, sitting by designation in the Ninth District.)

## OPINION

By SKEEL, J.

This appeal on questions of law and fact comes to this court from a judgment and decree entered for the plaintiffs in the Court of Common Pleas of Summit County. The action is one seeking an injunction to prevent the defendant from exercising the rights granted her as the holder of a C-1 and C-2 permit from the Department of Liquor Control of Ohio, in the operation of her retail grocery business located on Killian Road in the City of Kenmore, Ohio. The plaintiffs in their petition allege that they, collectively, own ten lots in the Cottage Grove Allotment No. 2, located in Tract No. 13, Coventry Township, Summit County, Ohio. The defendant owns sublots Nos. 505 and 506 in said allotment, said lots being located on the southeast corner of Killian Road and Brookside Avenue, as shown by the recorded plat. These lots, together with lot No. 507 (also owned by the appellant, but not mentioned in the petition, which lot fronts on Brookside, its north sideline abutting on the rear of lots Nos. 505 and 506), were sold by the allotters, William T. Sawyer and William B. Haynes, by deed dated April 28, 1928, to Rudolph and Lenore Schmidt. This deed, in part, provides:

"As a part consideration for this conveyance the grantee agrees for himself, his heirs and assigns, that no intoxicating liquors shall be manufactured or sold on said premises."

The Schmidts sold sublots Nos. 505, 506 and 507 to Helen Smith (defendant herein) on June 9, 1936. This deed contained the statement that the grantors held a "good and indefeasible estate in fee simple, and have good right to bargain and sell the same in manner and form as above written, and that the same are free from all incumbrances whatsoever, except taxes due and payable after date." No mention is made in this deed of the restriction imposed on the grantor by the allotter as above quoted.

Paragraph four of the petition then alleges that such restriction "That no intoxicating liquor shall be manufactured or sold on said premises" was contained in the deeds to each lot in said allotment and was part of the general restriction for the use and benefit of the purchasers and owners in the allotment. The petition also alleges that the defendant has openly and notoriously engaged in the sale of wine and beer on the premises and intends to continue to do so to the damage of the lot owners in said allotment. This petition further alleges that the plaintiffs have no adequate remedy at law and prays that the

defendant be permanently enjoined from selling wine and beer on the premises.

The answer of the defendant denies that the plaintiffs are the owners of the lots as pleaded in their petition, admits ownership of lots Nos. 505 and 506 in the Sawyer and Haynes Cottage Grove Allotment No. 2, and admits the restriction contained in the deed of defendant's immediate vendor, Rudolph C. Schmidt, as he received it from the allotter on April 28, 1926, but alleges that no such restriction was contained in the deed to this defendant but that said deed did provide that the lots were "subject to restrictions of said allotment." The defendant denies that the resriction noted was contained in the deed to each lot and denies that such limitation of use was a part of the general restrictions for the use benefit of the purchasers and owners. The defendant admits holding a C-1 and C-2 permit for the sale of wine and beer at retail "but not (to be) consumed on the premises." The defendant denies that the restriction noted was contained in the deed to each lot sale of wine and beer, and allege that if there be a covenant not to sell or manufacture intoxicating liquors on the premises, it was not made for the benefit of any other purchaser except the original vendor and that there was no such general scheme or plan by the original allotters or a covenant to that effect between the lot owners.

The defendant also alleges hat if there be such restrictions whereby the plaintiffs have cause to object, which is expressly denied, then "the other restrictions set forth in the original allotter's deed (meaning in the deeds of other lot owners) have been violated by the various property owners." It is also alleged that since the allotment was opened, the population has increased; that defendant's merchandise store has served a substantial part of the community since 1931; and that her customers in increasing numbers have requested her to supply in packages beer and wine to carry out. Such requests have been made by many of the residents of the allotment. It is finally alleged that many commercial businesses have grown up in the allotment such as garages, gasoline stations, grocery stores, taxi service, and that across the street, for a time, there was a night club where intoxicating liquors were sold and which is now used for parties where intoxicating liquors are consumed so that the character of the neighborhood has changed. It is alleged the defendant, to meet competition, must cater to the demands of her customers and make available to them beer and wine to carry out.

No reply was filed to the answer so that if it could be said that its allegations present an affirmative defense or defenses of changed conditions, thus nullifying the enforceability of the alleged restrictions, or that by mutual disregard of the alleged existing restrictive covenants against the sale or manufacture of intoxicating liquors they have become unenforceable, then the truth of such allegations of fact are admitted by the plaintiff without further proof.

The case was tried upon stipulations of fact filed with the papers in the case and some oral testimony which has been brought into the record by the court's conclusions of fact filed with the papers in the case. No transcript of all the oral testimony in the trial court was filed or agreed upon.

The stipulations of fact relate the history of the sale of lots in the allotment as hereinabove set out. It is clear from the contents of the petition that there is no allegation that the recorded plat contained provisions setting out a general uniform plan or scheme restricting the use of all of the lots in the allotment for the manufacture or sale of intoxicating liquor. The recorded plat contains no restrictions of any kind as to the use of the several lots. Nor is there any provision in any of the deeds delivered to purchasers from the allotters notifying the grantees that all purchasers shall be subject to such restriction for the benefit of all other purchasers and that such restriction shall be enforceable by each against the other. The stipulations of fact contain the following provision:

"12. In the examination of all of the Deeds in the allotment, none contained a covenant that all sales of lots in the allotment shall be subject to a like restriction."

From the stipulations of fact, there is no controversy about the fact that there are yet unsold lots; that the ownership of a one-half interest in the remaining lots has changed so that there cannot now be a common grantor to such lots as remain unsold, that one of the original grantors sold his interest in twenty-eight lots to a corporation in which the deed did not contain the restriction against the manufacture or sale of intoxicating liquors on the lots sold; that said corporation, with the remaining original grantor (William B. Haynes) sold one lot (541) without such restriction, that the corporation sold its interest in sixteen lots, then remaining, to the daughter of William T. Sawyer, one of the original allotters, without including the restriction against the manufacture or sale of liquor in the deed and although the said grantee is said to have testified in the trial in the Court of Common Pleas that her father had refused to deed lots in the allotment without such restriction. There is no legal right now available to the present lot owners to compel the inclusion of such restriction upon the sale of any of the remaining lots.

In the case of **Lopartkovich v. Rieger, 66 Oh Ap 332, 33 N. E. 2d 1014,** the appellant (plaintiff in the trial court) was seeking an injunction against the construction of a gasoline service station upon a lot purchased by the defendant in an allotment upon the ground that the defendant purchased with notice of restrictions which restricted the use of the property to residential purposes. The facts revealed that the allotment in which the property in question was situated was laid out in accordance with a general plan and " 'that in the original deeds to each of the lots in said allotment there were substantially similar restrictive covenants which were general and uniform throughout the allotment.' " Further, it is disclosed that no general plan or scheme of restrictions was filed with the county recorder at the time the plat of such allotment was filed for record. The restrictions contained in each deed from the original grantor did not contain a provision that each purchaser covenants and agrees, for the benefit of every other lot owner, that he will observe the restrictions. The plaintiff, in this case as filed in the trial court, was a lot holder who held title through an original grantee in whose deed the restrictions on the use of the land were the same as those contained in the deed of the original grantee through whom defendant's

title was acquired. In holding the plaintiff could not maintain the action the court said:

"When an owner of an allotment has a general plan of uniform restrictions for the lots in the allotment, and such restrictions are inserted in each deed of the allotment, one puchaser cannot enforce such restrictions against another purchaser unless the restrictions are so drawn that each purchaser covenants and agrees, for the benefit of every other lot owner, that he will observe the restrictions, or unless the purchaser against whom the restrictions sought to be enforced has notice of such general plan and purchases his lot with reference thereto. Such notice is shown when the recorded plat contains the general scheme or plan, or when the allotter in his deeds covenants that all sales of lots in his allotment shall be subject to like restrictions."

And on page 335, quoting from an unreported case, is found the following:

"'As we interpret the decisions in Ohio, the rule is that, when an owner has a general plan of uniform restrictions, and such restrictions are inserted in each deed of an allotment, one purchaser cannot enforce such restrictions against another purchaser unless the restrictions are so drawn that each purchaser covenants and agrees, for the benefit of every other lot owner, that he will observe the restrictions, or unless the purchaser against whom the restrictions sought to be enforced has notice of such a general plan and purchases his lot with reference thereto. Such notice is shown when the recorded plat contains the general scheme or plan, or when the allotter in his deeds convenants that all sales of lots in his allotment shall be subject to like restrictions.'"

In the case of **Kiley v. Hall**, 96 Oh St 374, 117 N. E. 359 (cited in the Lopartkovich case, supra), almost identical facts as are presented here were considered by the Supreme Court. The first and second paragraphs of the syllabus provide:

"1. The purchaser of a lot in an allotment whose deed contains restrictions as to the use of the lot is not chargeable from that fact alone with notice that like restrictions are contained in the deeds to other purchasers of lots in the allotment.

"2. A lot owner cannot maintain an action to enforce by injunction the observance of restrictions contained in the deed of another lot owner where it does not appear that the latter purchased his lot with notice of a general plan for the improvement of the lots of the allotment in accordance with the restrictions contained in his deed, or with notice that such restrictions were inserted in his deed for the benefit of the owners of the other lots in the allotment."

In the case of **Rehard v. Rini**, 72 Abs 115, the court, in dealing with this question, stated in the headnote of the case:

"1. A restrictive covenant in a deed of conveyance to the original purchaser of a sublot, made solely for the benefit of the grantor, the original allotter, limiting the use of such sublot for private residential purposes only, cannot be enforced by subsequent purchasers of a portion of the original sublot against a purchaser of the balance thereof."

There being no allegation in plaintiff's petition that the restriction against the manufacture or sale of intoxicating liquor contained in the

deeds of many of the lots in the Sawyer and Haynes Cottage Grove allotment No. 2 from the allotters to the original purchasers, contained a covenant that each purchaser would be subject to like restrictions or that all purchasers had notice of a general plan that such restriction was for the benefit of the owners of all other lots, the petition does not state a cause of action as to these plaintiffs. Likewise the evidence by reason of stipulation No. 12, completely negates the existence of a general plan or a common covenant enforceable at the will of each lot owner as against all others.

A decree will, therefore, be entered for the defendant.

HURD, PJ, KOVACHY, J, concur.